[L. A. No. 6117. In Bank.—September 13, 1921.]

## NORTHWESTERN MUTUAL FIRE ASSOCIATION (a Corporation), Respondent, v. PACIFIC WHARF & STORAGE COMPANY (a Corporation), Appellant.

[1] PLEADING—ISSUES—EVIDENCE—APPEAL.—It is settled law under the decisions of this state that where a case is tried without objection upon a showing of facts not pleaded, but supported by the evidence and covered by the findings, objection will not be considered on appeal that the pleadings do not present the issue.

[2] ACTION FOR DAMAGES—DESTRUCTION OF LUMBER BY FIRE—NOTICE OF NONLIABILITY.—Where a wharf and storage company notified a lumber company that there would be a strike of the longshoremen and wharf handlers on a certain date, that it would not receive a shipment of lumber for storage after that date, except subject to its not assuming any responsibility for delivery, or loss, or damages, or theft, or any cause whatever of that nature, until the strike was over and it was in a position to handle the same, and, with said understanding, shortly after the date of the strike the lumber was removed from a steamer by the master and piled in the rough upon the wharf for the express purpose of having the same stored by the wharf and storage company, the terms of the notice of nonassumption of liability were amply sufficient to cover a loss of the lumber by fire.

[3] BAILMENTS — NEGLIGENCE — NONLIABILITY — CONTRACT FOR.—A depositary or bailee for hire in the course of his ordinary business cannot relieve himself by contract or notice from responding in damages for loss arising from his own negligence, or that of his agents or servants.

[4] ID.—RIGHT TO REFUSE GOODS FOR STORAGE EXCEPT ON CONDITIONS. A wharf and storage company, anticipating a strike of longshoremen and wharf handlers, and having reason to believe that its facilities for handling business would be so disturbed as to render it unsafe to assume the usual risks, has the right to refuse to accept goods in storage except on condition of being released from liability for damages that might in any way be traceable to such disorganized conditions.

[5] ID.—DEGREE OF CARE REQUIRED.—Nothing short of gross or wanton negligence would make a wharf and storage company responsible for the loss of lumber placed on its wharf with the express understanding that it would be relieved from all liability, a strike being threatened which would disorganize its usual business, and that the owner of the lumber would take all of the risks if permitted to pile its lumber there awaiting storage.

[6] ID.—CONTRACT FOR NONLIABILITY—PUBLIC POLICY—VALIDITY OF
CONTRACT.—A contract between a wharf and storage company and
a lumber company by which the former permitted the latter to
place its lumber on the wharf of the former for the purpose of
storing it, upon the express understanding that, in view of the
fact that a strike of longshoremen and wharf handlers was threat-
ened which would disorganize the business, the former should not
be in any way liable, is not against public policy, but the con-
tract is binding upon the parties and operates to relieve the storage
company from negligence of its employees while in its service.

APPEAL from a judgment of the Superior Court of Los
Angeles County. Dana R. Weller, Judge. Reversed.

The facts are stated in the opinion of the court.

Goodwin & Morgrage and W. N. Goodwin for Appellant.

Hahn & Hahn for Respondent.

SLOANE, J.—This is an appeal from a judgment award-
ing damages to plaintiff for loss by fire of lumber stored on
defendant's wharf.

The plaintiff, an insurance company, sues on its own and
the assigned claims of other insurance companies, arising
upon subrogation to the rights of the owners of the lumber,
represented by the Union Lumber Company, a corporation,
from having paid the losses to the owners upon policies of
insurance thereon.

The defendant, the owner of the wharf, and engaged
in the wharfage and storage of lumber, disputes this liability
for the loss in question on the ground that it was relieved
from such liability by reason of a special contract with the
owners of the lumber whereby defendant accepted the de-
posit of this consignment of lumber subject to the owner's
risk.

It is true that this issue is not expressly raised by the
pleadings. The complaint avers that "At all times herein
mentioned defendant has maintained and operated, and does
now maintain and operate at South San Pedro, California,
a storage wharf for hire," and, that "on the eighteenth
day of August, 1916, the Union Lumber Company, a cor-
poration, was the owner of certain lumber and timber prod-
ucts which were there stored and situate upon the wharf

and premises maintained and operated by defendant at East San Pedro, California, as a wharf and premises for hire . . . that on said date said lumber and timber products were in the care and custody of defendant for a consideration, awaiting orders from its owner as to its disposition and removal therefrom,'' and was damaged by fire through defendant's negligence.

The defendant contents itself with simply denying ''that at the time or times in said complaint mentioned, defendant has maintained or operated, or does now maintain or operate at San Pedro, California, a storage wharf for hire,'' or that on the eighteenth day of August, 1916, the lumber in said complaint described was ''stored upon the wharf or premises maintained or operated by defendant.'' It also denies that the loss occurred through defendant's negligence, but there is no reference to the special defense that the lumber was placed on the wharf at the risk of the owner.

It is not the fact, however, as suggested by respondent, that this defense was raised for the first time on appeal. It was raised in the evidence and by the findings of the trial court. Evidence as to the special contract under which it is claimed that this lumber was stored on defendant's wharf, with a waiver of liability against defendant, was introduced by defendant without objection and the trial court specifically finds upon the issue thus raised.

[1] It is settled law under the decisions of this state that where a case is tried without objection upon a showing of facts not pleaded, but supported by the evidence and covered by the findings, objection will not be considered on appeal that the pleadings do not present the issue. (*Klopper* v. *Levy*, 98 Cal. 525, [33 Pac. 444]; *King* v. *Davis*, 34 Cal. 100; *Barbour* v. *Flick*, 126 Cal. 628, 632, [59 Pac. 122]; *Rudel* v. *County of Los Angeles*, 118 Cal. 281, [50 Pac. 400]; *Fernandez* v. *Western Fuse etc. Co.*, 34 Cal. App. 420, 423, [167 Pac. 900].) Not only was the evidence as to this waiver of liability introduced without objection, but the plaintiff participated in its introduction by cross-examining the witness as to the agreement. Had objection been made, the pleading could properly have been amended to conform to the facts as testified to.

The finding of the trial court upon this issue was that before the lumber was received upon the wharf the defendant company notified said Union Lumber Company as follows: "That there would be a strike of the longshoremen and the wharf handlers June 1st; that it would not receive said shipment of lumber after June 1, 1916, except subject to its not assuming any responsibility for delivery, or loss, or damages, or theft, or any cause whatever of that nature, until the strike was over and it was in a position to handle the same. That with said understanding and shortly after June 1, 1916, said lumber and timber products were removed from said steamer 'Noyo' by the master of said steamer and piled in the rough upon defendant's said wharf for the express purpose of having the same stored by defendant."

[2] The evidence clearly supports this finding that such notice was given and that the lumber was landed upon the wharf with that understanding. The terms of the notice of nonassumption of liability were amply sufficient to cover the loss by fire complained of. The only question open to discussion is the right of the defendant to exempt itself from liability for the negligence of its own employees.

[3] The general rule that a depositary or bailee for hire in the course of his ordinary business cannot relieve himself by contract or notice from responding in damages for loss arising from his own negligence or that of his agents or servants may be conceded. (*Railroad* v. *Lockwood,* 17 Wall. (84 U. S.) 357, [21 L. Ed. 627, see, also, Rose's U. S. Notes]; *Minnesota Butter & Cheese Co.* v. *St. Paul Cold-Storage etc. Co.,* 75 Minn. 445, [74 Am. St. Rep. 515, 77 N. W. 977]; *Dieterle* v. *Bekin,* 143 Cal. 683, [77 Pac. 664].)

[4] But in this case the owner had notice that the defendant was not accepting the responsibility of storing the lumber in the ordinary course of its business, but under special conditions. It was anticipating a strike, which actually occurred, and it had reason to believe that its facilities for handling business would be so disturbed as to render it unsafe to assume the usual risks. It, in effect, notified the plaintiff that it had suspended its usual line of business and would only accept the lumber upon its wharf at the owner's risk. Even so, an individual bailee might not be

permitted to excuse himself from damages caused by his personal want of ordinary care, but in the case of a strike, with its attendant disorganization of discipline and system, it would be strange indeed if an employer, and particularly a corporation which can only act through its employees, could not refuse to accept goods in storage except on condition of being released from liability for damages that might in any way be traceable to such disorganized conditions.

It is true in this instance that the loss by fire was not the direct result of the strike. It was contributed to, at least, by failure to construct an oil tank maintained on the wharf of defendant, as required by an ordinance of the city of Los Angeles, but the immediate cause of the fire was the negligence of one of defendant's employees in operating the machinery to which this oil tank was attached.

To what extent the conditions brought about by the strike may have contributed to such want of care of the employee cannot be determined, but it was a contingency to be anticipated, and which the defendant had a right to protect itself from by a special contract as to the liability assumed.

This case comes to us on rehearing from the district court of appeal, and we accept the conclusions of that court, and the reasoning on this point presented in the following language:

"With reference to the lumber destroyed by fire, it is evident that the defendant did not receive it as a wharfinger, nor was it received as a depositary, gratuitous or for hire, so long as the lumber remained on the wharf under the agreed conditions herein.

"But for comparison, the degree of care to be exercised by a depositary, and his liability for loss or damage to the thing stored will be stated. The code provides for the degree of care of limitation of liability in case of a deposit. If for hire, the depositary must use at least ordinary care for the preservation of the thing deposited (sec. 1852, Civ. Code); and if gratuitous only, at least slight care (sec. 1846, Civ. Code). 'No warehouseman or other person doing a general storage business is responsible for any loss or damage to property by fire while in his custody, if he exercises reasonable care and diligence for its protection and preservation.' (Sec. 1858c, Civ. Code.) [5] If such be

the rules by which the liability of the depositary is measured in the event of the destruction of the deposit, it would seem that nothing short of gross or wanton negligence would make a defendant responsible for the loss of the lumber placed on the wharf with the express understanding that the defendant would be relieved from all liability, and that the Union Lumber Company would take all the risks if permitted to pile its lumber there awaiting storage. From the foregoing testimony, the strong inference is that the Union Lumber Company had control of the lumber until piled and stored in the yard back of the wharf. Then the situations of the parties were that of contracting parties dealing at arm's-length. The defendant refused to receive the lumber in the usual way and informed the Union Lumber Company of the danger and risk of leaving this lumber even on the wharf during the strike. It permitted the Union Lumber Company to pile the lumber on its property under the express agreement that it, the defendant, would be under no obligation for its loss or damage, and that Union Lumber Company would take all the risk. When this agreement was made the defendant realized the dangers attending the strike which it knew would surely take place on June 1st. The strike did come and was serious. It was necessary to place watchmen on duty around the property. Even then there was violence and threats made against the defendant. Some of its 'employees were beaten up rather badly.' Such a contract, under existing conditions, not to take any risk for any loss or damage to the lumber from whatever cause was not only within the rights of the defendant, but was an act of good business judgment. At the time the contract was made, the Union Lumber Company was told by the defendant that it could leave the lumber on board ship, or it could take its lumber 'back to Redondo or take it back where it came from.' By placing it on the wharf in the face of the strike, and the conditions under which it was permitted to place it there, the Union Lumber Company did not use business prudence or ordinary care. (Sec. 1714, Civ. Code.)

"Even if the defendant did not exercise ordinary care in the preservation of said lumber, it violated no state law as a depositary. It had not stored the lumber and was, therefore, independent of the contract, not liable as a de-

positary. In making its contract with the Union Lumber Company, it violated no law against public policy. The public had nothing to do with the transaction, was not in any way interested in the matter. The transaction was a common-sense mutual arrangement between two competent contracting corporations concerning their private affairs. [6] Such a contract is not only not against public policy, but it is binding upon the parties and will operate to relieve the defendant from the negligence of its employees while in its service. (*Stephens* v. *Southern Pac. Co.*, 109 Cal. 86, [50 Am. St. Rep. 86, 29 L. R. A. 751, 41 Pac. 783].) 'The authorities all agree that the contract is not void as against public policy unless it is injurious to the interests of the public or contravenes some established interest of society.' (*Griswold* v. *Illinois Cent. R. Co.*, 90 Iowa, 265, [24 L. R. A. 647, 57 N. W. 843].) 'It must not be forgotten that you are not to extend arbitrarily those rules which say that a given contract is void as being against public policy, because, if there is one thing more than another which public policy requires, it is that men of full age and competent understanding shall have the utmost liberty of contract, and that every contract, when entered into fairly and voluntarily, shall be held sacred and shall be enforced by the courts of justice. Therefore, you have this paramount public policy to consider—that you are not likely to interfere with this freedom of contract.' (3 Am. & Eng. Ency. of Law, old ed., note 3, p. 875.)

"It should be constantly borne in mind that this was not a unilateral contract on the part of the defendant. The Union Lumber Company, by accepting the conditions upon which it was permitted to rough pile the lumber on the defendant's premises, accepted those conditions and affirmatively agreed to relieve defendant from all risks. The defendant and the Union Lumber Company freely contracted with all of the possible dangers in mind which might attend a tie-up of a large business by means of a strike of a comparatively large body of employees. The contract was to the effect that the defendant would not be responsible for the delivery, or loss or damage of this lumber. The terms of the agreement are broad enough in meaning to guard the defendant against all loss or damage by fire or other cause attending a general strike of its em-

ployees, including any loss or damage caused by reason of disturbed conditions, in consequence of, as a sequence to, a strike; shortage of help, overwork and overwrought remaining employees, interruption of the ordinary conduct of the business, a want of ordinary and usual care of employees in doing their work under stress and disturbance and threats; for lack of efficiency in coping with fire or other destructive agencies because of the condition of or scarcity of employees.''

In the light of the conclusion reached by the court of appeal and by this court that the defendant was released by its contract from liability for the damage sued for, and the trial court having found that the lumber was accepted upon defendant's wharf in pursuance of said agreement and understanding that it was so received at the owner's risk, the judgment is reversed, with directions to the lower court to amend its conclusions of law in accordance herewith, and render judgment for the defendant.

Shaw, J., Wilbur, J., Shurtleff, J., Lawlor, J., Lennon, J., and Angellotti, C. J., concurred.