FONVILLE *v.* WICHITA STATE BANK & TRUST COMPANY.

## Opinion delivered November 19, 1923.

1. BANKRUPTCY—DISCHARGED DEBT AS CONSIDERATION FOR NEW PROMISE.—The fact that a renewal note was given to cover a debt discharged in bankruptcy does not show a. lack of consideration, since the moral obligation was sufficient to support it.

2. BILLS AND NOTES—DURESS.—Where the president of plaintiff bank induced defendant to execute a new note for his debt to the bank, which had been discharged in a bankruptcy proceeding, by threatening the bank's ill will, and the note was renewed several times thereafter, the defense of duress was not established.

3. CONTRACTS—"DURESS" DEFINED.—To make a contract void for duress, the threats and circumstances must be of a character to excite the reasonable apprehensions of a person of ordinary courage, and the contract should be made under their influence.

Appeal from Washington Circuit Court; *W. A. Dickson,* Judge; affirmed.

*Sullins & Ivie* and *John Mayes,* for appellant.

There was a total lack of consideration to support the contract. The court erred in directing a verdict for the plaintiff. On appeal from a directed verdict, the evidence must be given its strongest probative value in favor of the party against whom the verdict is directed. 136 Ark. 128; 132 Ark. 441; 147 Ark. 30; 146 Ark. 555; 144 Ark. 282.

*J. W. Grabiel* and *Preston B. Cox,* for appellee.

There was no error in directing a verdict for the plaintiff. A moral obligation is sufficient to support a new promise to pay the discharged debt. 3 R. C. L. 324, § 147; 220 N. Y. 162; 1 A. L. R. 1700. A conditional promise is binding if it is shown that the condition has occurred upon which the promise was to be performed. 3 R. C. L. 327; 82 Ala. 85; 60 Am. Rep. 733; 220 N. Y. 162; 1 A. L. R. 1700. There was no duress. 3 R. C. L. Supp. 860; 26 Ark. 280; 99 Ark. 588; 138 S. W. 981; 7 Wall. 205; 14 Wall. 314; 16 Wall. 414. The question of duress was properly submitted to the court. 9 R. C. L. 717, § 7; 33 Ark. 156; 52 Ark. 425. The acknowledgment of the validity of the note was a waiver of the duress

and a ratification of the contract.   9 R. C. L. 725, § 15; 10 A. & E. Enc. Law, 337; 9 R. C. L. 717; 13 Mass. 371.

McCulloch, C. J. Appellee is a Texas corporation, engaged in the banking business at the city of Wichita, in that State, and it instituted this suit in the circuit court of Washington County against appellant to recover on a negotiable promissory note executed to it by appellant on July 5, 1919, for the sum of $6,152.32, due and payable six months after date.

Appellant pleaded in his answer that the note was executed without consideration, and, in support of his plea, alleged the fact to be that he was originally indebted to appellee in a sum of money, but was discharged in bankruptcy, and that the note in suit was executed solely to cover the amount of said discharged debt and interest thereon. Appellant also alleged in his answer that the execution of the note was procured by threats and acts of intimidation on the part of appellee's officers and agents.

Evidence was adduced in the trial before a jury, but the court directed the jury to return a verdict in favor of appellee for the full amount of the note in suit, which was done.

The only question presented on this appeal is whether or not there is any dispute in the evidence which would justify a submission of the issue to the jury.

The plea of lack of consideration presented no defense, for, according to all of the authorities on this subject, a discharge in bankruptcy only serves to wipe out the remedy, but leaves the debt as a moral obligation, which is sufficient to serve as consideration for a new promise to pay the debt. 3 R. C. L. 324.

On the issue as to duress in obtaining the note, the facts, according to the testimony of appellant himself, were as follows: Appellant originally resided at Wichita, Texas, and, after becoming indebted to appellee, he filed a petition in bankruptcy, and was discharged.

Later he executed a note at the request of appellee bank. The note in suit was a renewal, and the first note was executed in the year 1916, shortly after the discharge in bankruptcy. That note was due and payable in six months, and was renewed at, or shortly after, maturity, and the renewals were continued until the note in suit was executed, dated July 5, 1919. The note in suit was the last of five renewals of the first note executed after the discharge in bankruptcy.

Appellant testified that, shortly after the discharge in bankruptcy, he opened up a place of business within two doors of the bank, and that Mr. Ferguson, president of the bank, came into his place of business one day and insisted on his giving to the bank a new note for the debt which had been discharged in bankruptcy. Appellant's narrative of the transaction, as given in his own language, was as follows:

"He came into my little place where I was starting a new business, and wanted me to sign another note, and I told him, I said, 'Mr. Ferguson, my attorney advises me not to sign any new note on this bankruptcy,' and he says, 'Well, you want to pay it, don't you?' I said, 'Yes, I would be glad to pay it all right if I was able, but I cannot sign the note because my attorney told me not to.' He says, 'You don't want the ill will of this bank next door to you, do you?' I told him I didn't want the ill will of anybody, and he says, 'You sign this, or you will have the ill will of this bank,' and I still insisted on not signing it, and he insisted that if I didn't sign it it would give me trouble all the time on my credit, and I told him I would do anything to keep from giving me trouble. I had trouble enough going through bankruptcy, and I signed the note under the pressure of Mr. Ferguson."

Appellant further testified that he renewed the note from time to time because the bank "had a chain around my neck, * * * and there was nothing else for me to do only to sign it."

Our conclusion is that this testimony was not sufficient to present an issue as to intimidation or duress in obtaining the execution of the note in suit. In the case of *Bosley* v. *Shanner,* 26 Ark. 280, the court made the following declaration as to the law on this subject:

"In order that a contract or statement shall be void, because of threats or menaces, it is necessary that the threats and circumstances should be of a character to excite the reasonable apprehensions of a man or person of ordinary courage, and the promise, contract or statement should be made under the influence of such threats or menace."

This declaration of law was quoted with approval by the court in *Gardner* v. *Ward,* 99 Ark. 588, and it is directly applicable to the facts of the present case. It does not appear from appellant's testimony that the officer of the bank made any direct or tangible threat, but merely held out to him that, by refusing to sign the note, he would incur the ill will of the bank. This is not sufficient to constitute duress such as would avoid the contract. The parties were dealing entirely at arm's length; and there was no such intimidation or coercion as was calculated to put appellant in fear either of his person or property. It is certainly too much to believe that appellant was laboring under any fear or apprehension of danger for a period of three years during which time the note was repeatedly renewed. There being no evidence sufficient to justify the submission of this issue to the jury, the court was correct in peremptorily directing a verdict.

Judgment affirmed.