[Civ. No. 11286. Second Appellate District, Division One.—July 22, 1937.]

A. H. NICHOLS, Appellant, v. HITCHCOCK MOTOR COMPANY (a Copartnership) et al., Respondents.

Kelso, Berryman, Grua & Counts for Appellant.

Griffith & Thornburgh for Respondents.

HOUSER, P. J.—From the record herein, it appears that the defendant was engaged in the business of selling, servicing and repairing Packard automobiles; that plaintiff was the owner of a Dodge automobile; that an agreement was entered into between the parties, by the terms of which plaintiff agreed to purchase a new Packard automobile from the defendant, for which the latter was to receive plaintiff's Dodge automobile and a certain amount of cash. Apparently for the reason that the defendant was unable to make immediate delivery of the new Packard automobile to plaintiff, the transaction was evidenced by a written agreement. It likewise appears that the defendant agreed to provide "adjustment service" for a period of ninety days for the Packard automobile which it had sold to plaintiff, and that the printed form of the agreement contained the following provision: "In the event that an employee of the Seller is furnished to drive this vehicle for the purpose of instruction, or for any other reason, Purchaser agrees to assume full responsibility for any damage to this vehicle, or to any other property or to any persons including such employee, incurred while such employee is so engaged, and agrees to indemnify the Seller for any such damages." Within the period of ninety days which followed the delivery to plaintiff of the new Packard automobile, at plaintiff's request the defendant sent its employee to the home of plaintiff (which was about sixty miles from the defendant's place of business), and there procured the said automobile for the purpose of making some repairs or "adjustment" thereon. After having been repaired at defendant's said place of business, and while defendant's employee was driving the said automobile on its return to plaintiff's home, through the negligence of the said employee the said automobile was greatly damaged, whereupon plaintiff

brought an action against defendant to recover a judgment for such damages as plaintiff had sustained thereby. From a judgment that was rendered in favor of the defendant, plaintiff has appealed to this court.

At the outset, appellant indulges in a discussion of the point made by him to the effect that certain findings of fact which were made by the trial court were not supported by the evidence. In that regard, although it may appear that appellant's point is meritorious, nevertheless, since from a consideration of the questioned findings, it becomes apparent that the facts found therein were not determinative of nor vital to the decision that was reached by the trial court, it is deemed unnecessary to devote the attention to them which otherwise they might well deserve.

■ By reason of the clause in the agreement to which reference hereinbefore has been had, defendant asserts that plaintiff assumed ''full responsibility for any damage'' that occurred to the Packard automobile, and that defendant was indemnified therefor. On behalf of plaintiff, it is urged that because of the admitted fact that he neither read the agreement nor had his attention directed ʻto the provision therein by which the defendant purportedly was exempted from liability, the questioned clause of the agreement was void.

In that connection, the first case which is relied upon by appellant as an authority for his contention is that of *May Hosiery Mills* v. *G. C. Hall & Son,* 77 Cal. App. 291 [246 Pac. 332],—the pertinent facts of which were that upon the receipt by the plaintiff from the defendant of an order for ''1500 dozen hose'', the plaintiff sent to the defendant a letter and a so-called ''confirmatory copy'' which contained certain terms that differed from those that were expressed in the defendant's order. The plaintiff's letter also contained the statement that ''this order is not subject to cancelation except per terms mentioned . . . '' Furthermore (quoting from the opinion) : ''In the upper left-hand corner, inclosed in brackets, there was printed, among other conditions, a statement to the effect that any claim that the quality of the goods was not in accordance with the terms of the contract would not constitute cause for cancelation, and that the complaint as to quality should be made within fifteen days from the time of the delivery of the goods. This instrument was signed by defendants, and plaintiff made deliveries in accord-

ance with its terms.'' After having ruled that the counter-offer on the part of the plaintiff had been accepted by the defendant, and having cited and commented upon certain authorities with reference to the point here at issue, the court said: ''The mere presence of the printed conditions upon the order, without special reference thereto, became no part of the offer and they cannot be read into the consummated agreement. The contention of respondent in support of the judgment that it was the duty of defendants to have read their contract, and having read and signed it, they were bound thereby, is answered by what we have already said.''

The next case upon which appellant relies is that of *Los Angeles Investment Co.* v. *Home Sav. Bank,* 180 Cal. 601 [182 Pac. 293, 5 A. L. R. 1193], wherein it was held (syllabus) : ''A statement printed in the front of the commercial passbook of a bank depositor to the effect that the latter shall be concluded as to the genuineness of indorsements on returned and canceled checks unless he makes an objection thereto in writing within ten days after their receipt, is not binding on the depositor, where not signed by him, or shown to have been called to his attention, or otherwise to have been agreed to by him.''

The third case which appellant asserts supports his contention is that of *Golden Gate M. T. Co.* v. *Great American Ind. Co.,* 6 Cal. (2d) 439 [58 Pac. (2d) 374]. Therein it appears that the plaintiff had ordered a certain type of insurance coverage on automobiles that were owned by him, and that when delivered, the policies were not read by the plaintiff. Following a loss of the insured property, it was discovered that the coverage was not that which the plaintiff had ordered, notwithstanding which fact it was held that the plaintiff was entitled to recover a judgment for damages.

Appellant suggests also that where certain conditions in a contract are printed in smaller type than that which appears in the remainder of the agreement, or where that part of the contract which is under consideration is irrelevant to the purposes of the contract, neither the matter in the smaller type nor that which is irrelevant is binding, unless the party sought to be bound has either read such parts or has had his notice or attention directly attracted thereto. But for the reason that as a matter of fact the ''smaller type'' condition

is not present herein, and because of the additional fact, as manifested by the contract, that any purchaser of a new Packard automobile that was purchased through any selling agent thereof was entitled to ninety days' free "adjustment service . . . provided it is taken to the service station of the seller for that purpose", it becomes evident that the additional provision here in question, to the effect that "in the event that an employee of the seller is furnished to drive this automobile . . . for any purpose", was not irrelevant, either to the original sale of the automobile, or to the general contract that was entered into by the parties.

However, as offsetting the cases to which appellant has directed the attention of this court and to which reference hereinbefore has been had, defendant cites not only the general rule to the effect that where competent parties affix their signatures to a writing in execution thereof, in the absence of fraud or something akin thereto (or possibly excusable neglect), each of them is bound by its provisions notwithstanding his failure to read them; but also directs attention to specific cases that have been adjudicated in this state wherein the rule has been upheld.

The case of *Taussig* v. *Bode & Haslett*, 134 Cal. 260 [66 Pac. 259, 86 Am. St. Rep. 250, 54 L. R. A. 774], is in direct opposition to the authorities cited by appellant. In that case it appears that the defendants were the proprietors of a bonded warehouse in which the plaintiff stored "sixty-four barrels of spirits", by reason of which the defendants issued their warehouse receipt. Part of the printed matter that appeared at one side of the receipt proper, in type that was considerably smaller than that which made up the printed body of such receipt, included the statement that " . . . loss or damage by fire, the elements, shrinkage, leakage, or natural decay, at owners risk". A loss by leakage having occurred, plaintiff brought an action against the defendants for the ensuing damages. On appeal from the judgment, in effect, it was there held that the words just quoted, that appeared in the smaller type and at one side of the receipt, were binding on the plaintiff. With reference thereto, the court said:

"Counsel for the respective parties differ as to the effect of the notice printed on the face of this receipt, that loss by leakage was at the owner's risk. . . . We think it clear that the notice is a part of the contract. It was printed plainly

on the face of the receipt. The whole paper is extremely brief. It was the duty of respondents to take note of its contents, if they had the opportunity, and their opportunity was ample. The presumption, therefore, is, that they did read it. Against this presumption there is no evidence, and none, we think, could have been admissible to show that the respondents had failed to do what their duty required them to do. Assuming, then, that they read the receipt, and, whether they did or not, that they are chargeable with knowledge of its contents, they had fair warning that any loss by leakage was at their risk, or in other words, that the appellant declined all responsibility for loss by leakage. Their acceptance of the receipt and storage of the goods with knowledge of this condition made it binding upon them, as one of the terms of the contract.''

But whatever may be the correct rule in that regard, there is no necessity of devoting much time to a consideration either of the cases cited by appellant or those cited by respondents which respectively bear upon the legal effect of printed conditions of a contract which do not appear in the body thereof. For the reason that herein the question relates to a condition *that was contained within the body of the agreement* between the parties, it is apparent that the cases upon which appellant relies are clearly distinguishable from the instant case and may not be relied upon as authority for a reversal of the judgment. To the contrary, the general rule to which attention hereinbefore has been directed is applicable to the facts herein. Hence it follows that appellant's point cannot be sustained.

█   On the ground that the said clause in the contract which purportedly relieves the defendant from liability is contrary to public policy, appellant advances the argument that the contract was void, citing *In re Garcelon's Estate,* 104 Cal. 570 [38 Pac. 414, 43 Am. St. Rep. 134, 32 L. R. A. 595], and several other cases as authority therefor. It also may be noted that section 1668 of the Civil Code provides that: ''All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or wilful injury to the person or property of another, or violation of law, whether wilful or negligent, are against the policy of the law.'' On the other hand, in opposition to such authorities, respondents cite several California cases,

including the leading case of *Stephens* v. *Southern Pacific Co.*, 109 Cal. 86 [41 Pac. 783, 50 Am. St. Rep. 17, 29 L. R. A. 751], and *Northwestern Mutual Fire Assn.* v. *Pacific Wharf & Storage Co.*, 187 Cal. 38 [200 Pac. 934].

In volume II, pages 1079 to 1081, sections 574 and 575, of the American Law Institute's Restatement of the Law of Contracts, the general right is recognized to ''bargain for exemption from liability for the consequences of negligence'', with exceptions noted, among which is one that such a contract is illegal if ''one of the parties is charged with a duty of public service, and the bargain relates to negligence in the performance of any part of its duty to the public, . . . '' Assuming that such is a fair and accurate statement of the law it should follow that the terms of the contract and the nature of the services to be performed, in the course of which the possible negligence of defendant might ensue which was contemplated by the parties to the agreement in the instant matter, would be determinative of the point that is suggested by appellant.

It will be remembered that the principal subject-matter of the agreement was the sale by defendant to plaintiff of a new Packard automobile, the consideration therefor being a used Dodge automobile and a specified amount of cash; and that as part of such agreement, in accord with the policy of the Packard company,—''provided it (the automobile) is taken to the service station of the seller for that purpose'', —a free ''adjustment service'' was to be afforded to plaintiff for a period of ninety days next succeeding the date of sale. As hereinbefore has been set forth, the clause in the agreement, in substance, was that if plaintiff wished to avail himself of the services of an employee of the defendant ''to drive this vehicle for the purpose of instruction or for any other reason'', plaintiff would assume ''full responsibility for any damages . . . incurred while such employee is so engaged''.

In the case of *Stephens* v. *Southern Pacific Co., supra,* it appears that the railroad company, which was a common carrier, had leased a portion of its property to plaintiff. Among the covenants of the lease was the following:

''And it is further agreed that the said party of the first part (defendant) shall not be responsible for any damage caused by fire, whether from railroad engines, or from the

buildings of the said party of the first part, or by fires caused from any other means, but the risk and damage from whatever source shall be alone sustained by the said party of the second part (Stephens)."

A fire which was caused by the negligence of employees of the railroad company having occurred, by reason of which damage resulted to the lessee, he instituted an action against the defendant to recover a judgment for the amount of damage which he had thereby suffered. In ruling that the covenant in the lease was valid and not against public policy, the court directed attention to the fact that although defendant was a common carrier, that fact was wholly irrelevant to a decision of the question that was involved. In part it was said: "At that time it was not dealing with plaintiff Stephens as a common carrier, nor was Stephens contracting with it upon any such understanding or hypothesis. As far as this transaction was concerned, the parties when contracting stood upon common ground, and dealt with each other as A and B might deal with each other with reference to any private business undertaking. It follows that all those principles of law denying or restricting the right of common carriers to limit their legal liabilities for damages arising from injury to person or property stand upon a different plane, and are not controlling here."

In the case of *Northwestern Mutual Fire Assn.* v. *Pacific Wharf & Storage Co.*, 187 Cal. 38 [200 Pac. 934], although it appeared that the defendant therein was a warehouseman engaged in the wharfage and storage of lumber, where, because of a threatened strike, it accepted a deposit of a consignment of lumber subject to an agreement that it would not assume responsibility, it was held that "even if the defendant did not exercise ordinary care in the preservation of said lumber, it violated no state law as a depositary. It had not stored the lumber and was, therefore, independent of the contract, not liable as a depositary. In making its contract with the Union Lumber Company, it violated no law against public policy. The public had nothing to do with the transaction, was not in any way interested in the matter. The transaction was a common-sense mutual arrangement between two competent contracting corporations concerning their private affairs. Such a contract is not only not against public policy, but it is binding upon the parties and will operate

to relieve the defendant from the negligence of its employees while in its service. (*Stephens* v. *Southern Pacific Co.*, 109 Cal. 86 [41 Pac. 783, 50 Am. St. Rep. 17, 29 L. R. A. 751], . . . ) 'The authorities all agree that the contract is not void as against public policy unless it is injurious to the interests of the public or contravenes some established interest of society.' "

In the instant case, even though (*arguendo*) it be conceded that that part of the defendant's business which was devoted to repairing Packard automobiles might possibly be regarded as a business "impressed with a public use", neither by pleading nor by proof was such a use either relied upon or established by plaintiff. However, in any event, it is apparent that the public neither had nor could have any interest whatsoever in the subject-matter of the contract, considered either as a whole or as to the incidental covenant in question. The agreement between the parties concerned "their private affairs" only.

In the course of the opinion in the case of *Moss* v. *Chronicle Pub. Co.*, 201 Cal. 610 [258 Pac. 88, 55 A. L. R. 1258], in part it is said: "It is, of course, well recognized in this state that a servant may be loaned by his master to another so that the act done by the servant becomes the act of the master to whom he has been loaned and for the time being the general master is not responsible for his acts." (See, also, 39 Cor. Jur. 36, 1274; 46 A. L. R. 840; *Janik* v. *Ford Motor Co.*, 180 Mich. 557 [147 N. W. 510, Ann. Cas. 1916A, 669, 52 L. R. A. (N. S.) 294]; *Marron* v. *Bohannan*, 104 Conn. 467 [133 Atl. 667, 46 A. L. R. 838].) In the annotation in 46 A. L. R. 840, it is said: "But as a general rule the owner of a car is not liable for the negligent driving of his car by a person in the general employment of a garage man while getting or delivering his car. . . . " (Citing cases where the garage furnished a chauffeur; where the employee was returning a car after repairs; where a repairman had picked up a car to repair and sell it; where the garage had contracted to store, repair and deliver the car as required; and where a mechanic was testing the car after making repairs (*Segler* v. *Callister*, 167 Cal. 377 [139 Pac. 819, 51 L. R. A. (N. S.) 772]).

" . . . But it has been held, under some circumstances, that a driver in the general employment of a garage keeper

was, at the time of the negligence complained of, acting as servant of the owner, so as to make the latter responsible, or at least the question was for the jury in that regard. . . . '' (Citing cases where, by a storage contract, a garage keeper agreed to furnish the owner a chauffeur by the hour; where a garage keeper agreed ''gratis'' to send a man for the car whenever the owner wanted it stored; where a garage keeper sent his employee with a person who had bought a new car to drive him through the city; where the purchaser of a new car asked as a ''special favor'' that a factory employee drive him through the city (*Janik* v. *Ford Motor Co.*, 180 Mich. 557 [147 N. W. 510, 52 L. R. A. (N. S.) 294, Ann. Cas. 1916A, 669]) ; and where the seller of a car agreed to furnish a driver to drive the car through London (*Perkins* v. *Stead,* (1907) 23 Times L. R. 433).

In the instant case, the effect of the agreement between plaintiff and the defendant was that for the time during which the employee might be used by plaintiff, such employee ceased to be the servant of the defendant, but became the servant of plaintiff. It ought to be plain that if ''for any reason'' plaintiff wished to have one of the defendant's employees drive the automobile which plaintiff had purchased from the defendant, while so engaged (at least as between the interested parties), the defendant ought to have the right to provide that, since during the time that such employee was so engaged, in effect, he was the servant of plaintiff, the defendant should be relieved from any civil liability that might ensue from any negligent act of the employee. Assuming, as is indicated from the foregoing citations, that it is legally competent for a master to lend his servant to another, and within the arrangement between them to provide that, as to third persons, the person to whom the servant is lent shall assume liability for any tortious acts which the servant may commit, it should follow that no legal objection could be made to a further covenant which in its effect would absolve the original master from liability which might arise as between him and the person who has borrowed the servant.

The judgment is affirmed.

York, J., and Doran, J., concurred.