McMillan, Administrator, *v.* Palmer.

4-5550                                   131 S. W. 2nd 943

Opinion delivered July 3, 1939.

806

*D. W. McMillan* and *J. H. McMillan,* for appellant.

*J. H. Lookadoo,* for appellees.

BAKER, J.  The appellee, T. B. Palmer, was indebted to Dougald McMillan, Sr., for borrowed money in the sum of $3,500. This was evidenced by a note bearing interest at 10 per cent. per annum and was secured by a mortgage on Palmer's home at Amity, Arkansas, a 91-acre farm about a half mile from the home, and 480 acres of land in Pike county. This original debt was created in 1922. In 1931 the debt amounted to $3,641.18. At that time it was renewed and a deed of trust was given conveying all the property covered in the original mortgage, and there was added 75 acres of land in Garland county, which was at that time the home place of Palmer. Dougald McMillan, Sr., died in 1933. This indebtedness had not been paid but had been increased by interest and advances for taxes. Dougald McMillan, Jr., was appointed administrator of his father's estate. On account of his efforts to make collection, Palmer made application to the HOLC offering a mortgage upon his property in the town of Amity, where he then resided, for a loan of $2,500. He proposed to give a first lien on the property as security for the debt. The administrator filed a "consent" agreement to accept $2,500 in bonds

from the HOLC. The property was appraised, and it was finally proposed that a loan of $2,200 would be made, provided approximately $300 was expended in repairs on the home and in payment of certain taxes and expenses, leaving $1,820.03 to be applied to the debt due the estate. In accordance with this proposition there was later delivered to the appellant $1,800 in bonds and $20.03 in cash, and at that time the administrator executed a release in order that the HOLC might take and have a first lien against the home property at Amity. It is not in dispute that, at the beginning of these negotiations, the administrator informed Palmer that he could not secure a loan from the HOLC for an amount sufficient to pay Palmer's debt to the estate, and we think it may be conceded that after the bonds from the HOLC were delivered and credited on the indebtedness owing by Palmer he executed new notes giving a second lien on the homestead property and a first lien on the 480 acres in Pike county, a 90-acre farm near Amity and 75 acres in Garland county. This balance represented by the new obligations was $3,015, and Palmer executed three notes for $1,005 each, the first due one year after date, the second two years after date and the third three years after date. On these three new notes interest was payable at 8 per cent. instead of 10 per cent., according to the original indebtedness. Palmer did not make payment upon this indebtedness and suit was filed to foreclose upon it, including additional money advanced to pay taxes. After this suit was filed parties entered into an oral agreement whereby Palmer was permitted to cut pine timber from the Pike county land and apply $4 per thousand feet upon the debt due the administrator. Not all the timber was cut before Palmer ceased his milling operations . There was an agreement made also whereby Palmer was permitted to enter into some mining operations on the Pike county lands. The Atlas Quicksilver Corporation was authorized to carry on these mining operations and for that reason it was finally made a party to this suit. When the suit to foreclose was pressed the defendants filed an amended an-

swer in which they pleaded that the plaintiff had signed an agreement with the HOLC to accept the $1,832.40 in bonds as a full and complete settlement of the debt; that the plaintiff then, in violation of the law and by threats of the foreclosure of the mortgage, forced Palmer to give him a new mortgage on all the property for the difference in the amount plaintiff claimed the defendant owed and the face value of the bonds received and asserted these matters as a complete bar to plaintiff's right to recover.

In addition, by way of cross-complaint, defendant, Palmer, pleaded that he had paid from the timber cut upon the lands $1,678, and that this was paid through threat and duress, and he asked for a recovery of this sum. The decree of the court was in accordance with the defendant's contention, and plaintiff was not permitted to recover for the balance due upon the three notes aggregating $3,015 and advancements made to pay taxes, but the court also held that the payments made by Palmer of the $1,678 were voluntary, and that he would not be permitted to recover. From that decree plaintiff duly appealed, and the appellees have prayed a cross-appeal asking a recovery of the amounts paid upon the $3,015 alleged indebtedness.

In a matter of this kind wherein our opinions are preserved, there is little merit in repetition. On that account we are announcing as a preliminary to whatever comment that we may offer that the case of *Sirman* v. *Sloss Realty Co., Inc., ante* p. 534, 129 S. W. 2d 602, is determinative of the principles involved upon this appeal. It remains for us to make application of our conclusions therein to the case at bar. What we have to say now in making such application may also be treated as supplemental to the case of *Sirman* v. *Sloss Realty Co., Inc.,* *supra,* in overruling the petition therein filed for a rehearing. We find in this class of cases that counsel not only here, but in other cases that have been cited speak of and discuss propositions of secret agreements and fraud. If it is meant by the term "secret agreements," an implication that the parties have not dealt openly with each other, but with stealth and with hidden transac-

tions to the disadvantage of the HOLC, and that corporation has been injured thereby, it should make the complainant offer its proof thereof. It certainly does not lie in the mouth of Palmer to enter voluntarily into a contract with the administrator of the McMillan estate and then plead his own conduct as a form of secret agreement or as a species of fraud which impairs the contract entered into between Palmer and the HOLC and on that account invalidate the other contract made with the administrator of the McMillan estate. If it should be conceded that the release executed by the administrator of the McMillan estate was in itself sufficient to discharge the indebtedness Palmer owed, that fact alone would not be conclusive of the controversy presented on this appeal. That is true for the reason that the moral obligation to pay what one justly owes is a sufficient consideration to support a new note or other evidence of indebtedness executed in acknowledgment of the amount owing. Even an unwritten promise has been held sufficient to revive a pre-existing debt. *Apperson & Co.* v. *Stewart,* 27 Ark. 619; Gilbert's Collier on Bankruptcy, p. 384, § 574; *Fonville* v. *Wichita State Bank & Trust Co.,* 161 Ark. 93, 255 S. W. 561, 33 A. L. R. 125. This last cited case is also authority decisive of the question of duress.

There is perhaps no more effective release of one from the payment of his just obligations than proceedings and discharge in bankruptcy. But it has been seen that one who renews his old debt discharged in bankruptcy by a new obligation is bound thereby. Such concession above set out, however, was not made. It was pleaded, established by proof and not seriously disputed that after the bonds were delivered there was an unpaid balance of the original debt. In the case at bar, as in other cases of this kind, the creditor was under no obligation to discharge his debtor for a sum less than the full amount due, and, if he permitted him to take some of the property mortgaged and pledge it to another lender, this was a matter of agreement and contract, and we think that so long as the parties deal fairly with each other there is no cause or reason to hinder them in their

freedom to contract in regard to their own private business affairs. There is no sounder public policy. *Northwestern Mutual Fire Ass'n* v. *Pacific Wharf & Storage Co.*, 187 Cal. 38, 200 P. 934, 937.

Authority for the following statements may be found in 1 C. J. S., p. 468, § 3, and other standard texts. There was no dispute about the amount due or owing, hence no compromise or settlement for a sum less than the amount claimed. There can be very little merit in an argument or elaboration of the principles of accord and satisfaction for settlements that are controlled by such principles are matters of contract entered into by the parties. The parties made their own agreement. They executed new notes for $3,015, a second mortgage upon the Amity property and a first mortgage upon other property. Certainly the courts may not declare as a matter of law that the parties were not free to enter into and make their own contracts. Courts may not substitute for the parties agreements they did not intend and bar their rights of recovery that both acknowledged.

In addition to the authorities cited in the case of *Sirman* v. *Sloss Realty Co., Inc., supra,* we now call attention to *Glick* v. *Bank of America,* Civ. No. 3911 App. Dept. of Superior Court in and for Los Angeles County, case No. 470,595 Ct. 357, Certiorari denied January 3, 1939, 305 U. S. 657, 59 S. Ct. 357, 83 L. Ed. 426.

In the foregoing citation it appears that this matter was presented to the Supreme Court of the United States by writ of certiorari which was denied. It is perhaps apparent to every one that if the announcements in the Glick Case above were contrary to the public policy in the United States, the highest court of our country might well have said so, making use of the opportunity to do so. We cannot think that a more extensive elaboration of the principles involved in this controversy will be of any particular benefit in this or any similar case.

It follows that the trial court was in error in dismissing the plaintiff's complaint, and the decree must, therefore, be reversed. It is reversed with directions to

enter a decree of foreclosure and order a sale of the property giving such recognition to the mining company's rights as the contract provides, including in such sale also that in the second mortgage. In directing a sale of the mortgaged property, the court may order such sale in the order requested by mortgagor, if deemed desirable. The homestead property may not be sold unless the other or remaining property be insufficient to pay the indebtedness.

The appellee was not entitled to recover, and his cross-appeal is dismissed.

BAKER, J. (on rehearing). Since the opinion was handed down in this case the Supreme Court of California has reversed the appellate court in the matter of the case of *McAllister* v. *Drapeau,* 92 P. 2d 911. The appellee has filed a petition for rehearing, calling our attention to that fact and insisting upon error in our conclusions, for the reason in the case of *Sirman* v. *Sloss Realty Co., Inc., ante* p. 534, we gave approval to the announcement made in the above cited McAllister case, now reversed by the Supreme Court of California, which court cited our recent case of *Sirman* v. *Sloss* with approval. It is urged that we should now distinguish this case upon rehearing from the case of *Sirman* v. *Sloss, supra, upon* the sole ground that Sloss Realty Company gave notice when it filed the consent to take bonds that it intended to take a second mortgage from Sirman. We agree with appellee in his contention that there is this distinguishing characteristic. The opinion of the Supreme Court of California is far from convincing. It seems, however, that the sole ground for that distinction was that no notice was given that the mortgagor intended to give a second mortgage, and it was insisted that the rules of the HOLC precluded the execution and acceptance of a second mortgage at the time that the consent to accept bonds was filed, and the release was treated as absolute, notwithstanding the fact that the parties had agreed upon their own settlement. Otherwise stated, the

contracting parties clearly understood that the release would not pay or discharge the indebtedness, but that the intention was to enable the mortgagor to give the first lien to the HOLC. It is also stated, in the recent opinion under consideration that the second mortgage was executed under duress, that is to say, a threat to sue or fore close unless the second was executed and that similarity with the case at bar may be noticed in passing.

These announcements of the California Supreme Court have been duly considered and with the utmost respect to that high tribunal, and, without intention to be critical, we are compelled to express our disapproval of its conclusions. We have heretofore called attention to the fact that accord and satisfaction arises out of contract.

It appears to us that if we should follow the conclusions of the California court it would be tantamount to a declaration that if one satisfies a first mortgage in order that he might take a second mortgage upon the same property, he will be met, upon an effort to foreclose this second mortgage, with a plea of satisfaction of the indebtedness by the release of the first mortgage, and, if he had at any time threatened to foreclose this first mortgage, he would then be confronted with the plea of duress in that the second mortgage was given to avoid foreclosure. The mere statement of these conditions and holdings is a refutation of the soundness of the announcement. It was not the intention of Palmer to settle his indebtedness when he executed the mortgage to the HOLC, nor did he mean at that time to insist that the bonds issued became a legal discharge of the amount of the indebtedness that he owed. He mortgaged the other property to secure the balance or remainder that he owed over and above the amount of bonds accepted by the creditor and the appellant now holds a first mortgage on all the properties except the home place and on that a "secret" second mortgage.

We summarize our conclusions as follows: In accord and satisfaction there are certain elements that must usually or ordinarily be considered. First, there

is a disputed amount involved. Second, there is a consent to accept less than the claimed amount in settlement of the whole. In this case there was no dispute. There was an actual agreement upon the amount that should be paid. 1 Am. Jur., Accord and Satisfaction, §§ 19 and 30. 1 C. J. S., Accord and Satisfaction, §§ 1, 2, and 3. 1 R. C. L., Accord and Satisfaction, § 3.

The only allegation of fraud is that there was a second mortgage, that it was entered into secretly and that it should not be enforced. There is no evidence of this alleged fact. The execution and delivery of a second mortgage does not violate any sound policy of the law. This fact was recognized by the very rules of the HOLC by which Palmer now seeks to shelter himself.

The following rule is copied from appellee's brief: "(1) If the home owners' income is so reduced that he is unable to meet full amortization, payments from the beginning on his obligations to the corporation, the second mortgage shall not require any principal payments prior to June 13, 1936, and payments thereafter shall be on a schedule which the home owner may reasonably be able to meet."

It is not alleged nor established by proof that Palmer comes within the protection of this rule. Certainly he does not, as his so-called "second mortgage" conveys several other pieces of property.

Both these matters as alleged and insisted upon by appellee are supported by the holding of the Supreme Court of California in reversing the McAllister case, *supra*. That court insists in the opinion that in the execution of a second mortgage the mortgagee is clearly at fault and the mortgagor perhaps a little to be blamed because he executed the second mortgage under duress. The same duress is established in the present case, that is, that the mortgagor not only threatened to sue, but did actually file a suit to foreclose the lien of the mortgage; that the mortgagee labored under the effects of this threat when he executed the second mortgage. We submit that in no other class of cases in American jurisprudence will a threat to foreclose to enforce acknowledged

rights, even when partially executed by the filing of a suit, be held to constitute duress. Our own courts have defined duress. The writer of this opinion gathered together some of our own decisions upon that point in a recent case. *Perkins Oil Co.* v. *Fitzgerald,* 197 Ark. 14, 121 S. W. 2d 877.

We think the unsoundness of the conclusions reached by the California court in the case of *McAllister* v. *Drapeau, supra,* is clearly demonstrated by pursuing that conclusion to an ultimate result. If we regard as sound the assertion that the purpose of the Congress in enacting the HOLC law was to provide a means of relief for distressed home owners, then we must regard that ultimate purpose as being beneficent, one that will not defeat itself in its enforcement. At the time this institution was formed and the corporation began lending money to home owners, all of them, of course, were in financial distress. If suits had not been actually instituted and foreclosures had not been consummated, there was, at least, no doubt, in many instances, the threat to foreclose. If that threat to foreclose constituted duress such as to make invalid a contract later entered into by the parties, then no creditor having knowledge that the law had been so declared would thereafter permit his debtor to enter into a new contract with him, to give sufficient time to meet his obligations, as all such new obligations made under such circumstances would be under the ban of judicial disapproval and subject to a decree of invalidity because executed under that kind of duress. Therefore, the creditor would necessarily force a foreclosure and sale of the property rather than accept the debtor's new promise, and grant him sufficient time within which to pay his debt and save his property from sale.

No such result was intended or contemplated by the law under which the HOLC was created.

With the utmost respect for the highest judicial tribunal of a sister state, we are forced to disagree with the conclusions.

The petition for rehearing is denied.