**B. ANDERSON, Appellant,**

**v.**

**The INDUSTRIAL STATE BANK OF HOUSTON, Texas, Appellee.**

**No. 568.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

March 8, 1972.

Rehearing Denied March 29, 1972.

Taylor Moore, Browne & Moore, Houston, for appellant.

Sam Dawkins, Jr., Eastham & Meyer, Houston, for appellee.

SAM D. JOHNSON, Justice.

This is a suit on a promissory note brought by the Industrial State Bank of Houston against Billy Anderson. On July 30, 1970, the note was executed by Anderson and such execution is admitted. It was due and payable on October 28, 1970, and was in the principal sum of $8,000.00. The note was not paid when it became due and the instant suit seeking principal, accrued interest and attorney's fees as provided for in the note, was instituted. Summary judgment was granted for the plaintiff Industrial State Bank and the defendant Anderson perfects this appeal.

Some time prior to the time the note described above came into existence the defendant Anderson acquired a total of 9,100 shares of stock in Universal Electronics Corporation through a series of purchases. These purchases were made during the time a Mr. G. E. Helble was an officer of the Pasadena National Bank. Anderson alleged that a loan was acquired from the Pasadena Bank enabling him to make the initial purchase and all subsequent purchases of the Universal Electronics Corporation stock. The defendant Anderson subsequently obtained a loan in the sum of $8,170.00 from a second bank, the International Bank of Houston, giving his Universal Electronics Corporation stock as security and thus retiring his loan at the Pasadena Bank.

In June of 1969 Mr. Helble moved from the Pasadena National Bank to the plaintiff Industrial State Bank. It appears that Mr. Helble and Mr. Anderson knew each other for a number of years on a social basis and through banking affairs and therefore after Helble's move they continued to see each other from time to time. When the defendant Anderson's note thereafter matured at the second bank, International, he alleged that he considered selling his Universal Electronics stock to pay off his debt there. According to the allegations of the defendant Anderson it was at this time that Helble, now an officer of the third

bank, the plaintiff Industrial State Bank, stated in substance that there was no use in selling his stock, that it was going up, and that the plaintiff bank would loan Anderson the money to pay off his loan at the International Bank.

According to the allegations of the defendant Anderson it was under these circumstances that he obtained the original instant loan on June 17, 1969. It is to be noted that such date is well after Anderson's final purchase of Universal Electronics stock and occurred at a time when he was at complete freedom to do anything with his stock that he wanted to do. The loan acquired by Anderson at the plaintiff bank was renewed on September 15, 1969, December 14, 1969, and again on July 30, 1970. No reduction in the principal of the loan was ever made and the final renewal, which had matured and become due, became the subject of this suit.

After attempts to collect on the note proved futile, the plaintiff bank filed suit for recovery, attaching a copy of the note to its pleadings. Anderson does not deny the essential elements of the note or the genuineness of his signature but attempts to assert defenses to recovery. The essence of his contention is that Helble's action in allegedly dissuading him from selling his Universal Electronics stock was part of a large conspiracy to maintain the value of stock which was to inure to the benefit of the conspirators. The alleged conspiracy was asserted to have involved a number of people and a number of banks. Lastly, the stock of Universal Electronics was alleged to have become worthless.

The instant appeal is predicated on three points of error. The appellant prays for reversal because of (1) the existence of material fact questions, (2) the facts relied upon to support the judgment are insufficient in law since they are statements of interested persons, and (3) insufficient time was allowed to develop the facts.

■ The granting of summary judgment is proper if the pleadings, depositions, an-

swers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. 166–A(c), Tex.R.Civ.P. The evidence which may be considered consists of depositions, answers to interrogatories, admissions and affidavits; verified pleadings do not constitute summary judgment evidence. Hidalgo v. Surety Savings and Loan Association, 462 S.W.2d 540 (Tex. Sup.1971). In the instant case the defendant Anderson filed an affidavit opposing the plaintiff bank's motion for summary judgment. The affidavits filed in favor of the motion included those of John Devoke, G. E. Helble, G. W. Stelzig and A. J. Eastham. In addition the depositions of the defendant Billy Anderson and G. E. Helble appear.

 It is to be recalled that the signature on the note in question was admitted. "When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense". Tex.Bus. & Comm.Code Ann. sec. 3.307(b), V.T.C. A., (1968). Plaintiff was therefore entitled to recovery upon presentation of the note, the showing of present ownership and holding of said note and the establishment of the defendant's signature thereto, unless the defendant raised a defense. The defense alleged purported to be fraud and/or illegality. These are defenses which must be plead affirmatively. Rule 94, Tex.R.Civ.P. The record, by the introduction of depositions, answers to interrogatories, admissions, or affidavits, must show this affirmative defense, or plaintiff, who established a prima facie case for recovery under section 3.307(b), was entitled to recover on summary judgment. Gulf, Colorado & Santa Fe Railway Co. v. McBride, 159 Tex. 442, 322 S.W.2d 492 (1958). The defendant's attempt to raise this defense appears in his affidavit opposing the bank's motion for summary judgment.

The issue before this Court is whether defendant's affidavit raised a fact issue concerning its defenses against the note. The form, as set forth in Tex.R.Civ.P. 166–A(e), requires that "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." The Supreme Court in Youngstown Sheet & Tube Co. v. Penn, 363 S.W.' 2d 230, 233 (Tex.Sup.1962) construed this rule stating: "Although there is no express requirement that the affidavits state that they are made on the personal knowledge of the affiant, we think this is the intendment of the rule". See also Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396, 399 (1958).

 Defendant's affidavit, in opposition to plaintiff's motion for summary judgment recites very dubious "facts as would be admissible in evidence." Beyond this, defendant's affidavit does not show affirmatively that the affiant is competent to testify even about them in that it is not shown to be made on his personal knowledge. Defendant fails to affirmatively set forth that these facts are within his knowledge and establish his competency to testify about them.

This, in itself, is sufficient reason to deny consideration of defendant's only proof of a defense. See Melody v. Texas Society of Professional Engineers, 421 S. W.2d 693 (Tex.Civ.App.—Dallas 1967, no writ); McLaren v. Hunting Bayou Co., 453 S.W.2d 300 (Tex.Civ.App.—Houston (14th Dist.) 1970, writ ref'd n. r. e.). In addition, however, defendant's deposition was taken subsequent to the making of his affidavit and in it he was closely questioned concerning his assertions and allegations as to fraud and illegality in his affidavit. In response to direct and numerous questions on this issue Anderson stated that all of the information he had on this subject was what he had been told by his

attorney. (His attorney, Mr. Moore, gave no testimony and made no affidavit.) On five different occasions Anderson testified as follows:

"Q. And what true facts, if any, do you know, Mr. Anderson?

A. What true facts, if any, do I know?

Q. Yes. This is your affidavit: "I have reason to believe, and do believe, that the stock of Universal was sold to me through fraudulent misrepresentation and failure to disclose the true facts to me." And you tell me Mr. Helble made fraudulent misrepresentations and didn't disclose the true facts. I'm asking you what true facts do you know.

A. It is on a memorandum of Mr. Taylor.

Q. In other words, the true facts you know are what Mr. Moore has told you.

A. Yes, sir.

Q. Do you know any other about it other than what he has told you?

A. I don't recall, sir.

. . . . . .

A. I think Mr. Helble and Mr. McDonald did it (sold the stock) together.

Q. And that they were rewarded together by a gift of stock, is that correct?

A. That's right, sir.

Q. Have you done any investigation of your own on that other than relying on memos furnished to you by your attorney?

A. No, sir. (Parenthesis added)

. . . . . .

Q. Have you told anybody that Industrial Bank was a participant in a scheme to manipulate the price of Universal Electronics stock?

A. No, sir.

Q. Have you told people not to bank at Industrial Bank?

A. No, sir.

Q. And all these facts about schemes to manipulate and so on are what has been related to you by your attorney, is that correct?

A. Yes, sir.

. . . . . .

MR. MOORE: Sam, I don't want to unduly restrict you, but we have covered this three times. He has specifically said he relied upon my investigation. You are talking about a wholesale question about what is alleged in his amended answer.

Q. You heard what your lawyer said. You are relying on what he has discovered since the suits were filed, in other words?

A. Yes.

. . . . . .

Q. What was Mr. Helble's interest? What was his interest you have reason to believe for selling it?

A. I believe that he got a commission of some sort to sell it.

Q. Who do you believe he got the commission from?

A. Mr. Watson or Mr. Davidson or both.

Q. What leads you to believe that?

A. Mr. Taylor's memorandums.

Q. All right. In other words, what Mr. Taylor Moore has told you.

A. Yes, sir."

█ It is made apparent in Anderson's deposition that all the information possessed by him and recited in his affidavit on the asserted defense of fraud and/or illegality was what had been told to him by his attorney and was not from his (the affiant's) personal knowledge. By such testimony the asserted defense is established to be wholly hearsay and as such it does not constitute proper summary judgment evidence. Being without summary judg-

ment evidence the sole basis of defendant's affirmative defense fails. Upon such failure plaintiff is entitled to recover on its prima facie showing. Gulf, Colorado & Santa Fe Railway Co. v. McBride, supra. Defendant's first point of error is overruled.

Upon the defendant's failure to establish a defense the plaintiff was entitled to judgment upon its prima facie case. This being true, the affidavits need be used only to establish plaintiff's present possession and holding of the note. Defendant's second point of error is overruled.

■ Defendant's last point urges error because of alleged insufficient time to develop his evidence. The application to the trial court is addressed to the discretion of the trial court in this respect, Butler v. Crockett Production Credit Ass'n, 303 S. W.2d 464 (Tex.Civ.App.—Fort Worth 1957, writ ref'd), and in the absence of abuse of such discretion the court's ruling will not be disturbed. We find no such abuse in this instance.

The judgment of the trial court is affirmed.