**SEA HOSS MARINE ENTERPRISES, INC., et al., Appellants,**

**v.**

**ANGLETON BANK OF COMMERCE, Appellee.**

**No. 16638.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

April 8, 1976.

Rehearing Denied May 6, 1976.

Pope & Waits, Dougal C. Pope, Houston, for appellants.

Wiley Thomas, Angleton, for appellee.

EVANS, Justice.

This is a suit on two promissory notes. The makers of the notes appeal from an instructed verdict.

Appellee, Angleton Bank of Commerce, brought this suit to recover on a $44,000.00 promissory note executed by Roger Hoss, individually, and on a $60,000.00 note executed by Hoss and Sea Hoss Marine Enterprises, Inc. Hoss denied liability on the $44,000.00 note, asserting that he had signed a note in blank and that it had been completed without his authorization. Hoss and Sea Hoss Marine Enterprises, Inc. contended that the $60,000.00 note was invalid in that it had been obtained through duress. At the conclusion of a jury trial, the trial court instructed a verdict in favor of appellee for the principal amount due under both notes, interest accrued thereon and for attorney's fees under both notes in the total sum of $30,000.00. Both Hoss and Sea Hoss Marine Enterprises, Inc. have appealed.

■ In their first two points of error appellants contend that material fact issues were raised by the evidence as to their liability under the notes in question precluding rendition of an instructed verdict against them. In reviewing these points we accept as true all evidence supporting appellants' contentions and indulge every reasonable inference which can be drawn in their favor; we reject all evidence and inferences to the contrary. *Frazier v. Hanlon Gasoline Co.*, 29 S.W.2d 461, 471 (Tex.Civ. App.—Eastland, 1930, writ ref'd); *Anderson v. Moore*, 448 S.W.2d 105 (Tex.1969).

■ Hoss did not deny signing the $44,000.00 note dated April 10, 1970, but testified that it had been executed in blank and left with appellee pending his further instructions. He had been in the fishing and ship building business for 30 years, had owned a number of corporations and over a period of about twelve years had borrowed several million dollars from appellee in connection with the operation of his companies. He frequently traveled to Central and South America on business matters and sometimes would sign a note in blank and leave it with appellee upon the condition that if he needed a loan while he was away from the country, appellee could fill in the note in the amount of the loan. This had been a common practice in his dealings with appellee. In March 1970, Hoss was planning to go out of the country on business and signed a note in blank which he left with Mr. Foy Knipp, who was president of appellee at that time. He left this note with instructions that Mr. Knipp could fill in the note in such amount as he might need to borrow up to $15,000.00 from appellee while he was away in connection with a "deal pending on a boat called 'Big John.'" Hoss testified that when he signed the note being sued on it had not been filled in for any amount and was not dated. He never gave anyone permission to fill in the note except for the authority which he gave Knipp with respect to the Big John transaction.

The only other witness who testified on these issues was Jimmie Jordan who was president of appellee at the time of trial. Jordan identified appellee's liability ledger sheets on Hoss which showed the $44,000.00 note listed under date of April 10, 1970, but did not show it posted until May 12, 1970. The ledger showed a zero balance as of May 1, 1970, and also indicated a $44,000.00 payment posted January 18, 1971, leaving a zero balance on that date. The only bank records produced by appellee indicating that Hoss had received the value of $44,000.00 for the note was the liability ledger and the note itself. No cancelled checks or deposit slips were produced to show that Hoss had received the amount of the note.

It was appellee's contention that the $44,000.00 note represented the purchase price of certain stock in Delta Corporation, a holding company of appellee. Hoss had previously signed in blank a note payable to Bellmead State Bank of Waco dated October 10, 1969, which he had authorized Knipp to complete in the amount of $44,000.00. The purpose of that note had been the acquisition by Hoss of 2,000 shares of stock in Delta Corporation and it was subsequently paid off by Delta Corporation to Bellmead State Bank of Waco. Hoss had carried a liability to Delta Corporation in the amount of that note on his financial statement. It was one of appellee's theories that the Bellmead State Bank note had been refinanced by Delta with appellee on April 10, 1970, and that the note sued upon in this case represented the indebtedness of Hoss under the prior note. Appellee failed to produce documentary evidence in support of this theory and Hoss denied knowledge of such a transaction.

The evidence also showed that appellee had maintained a bank account at City National Bank in Austin, Texas, and that in October 1969 the Austin bank had made four loans to E. P. Pederson, Jr., Carl Flora, Foy Knipp and Al Kuvet in the amount of $44,000.00 each. The proceeds of those loans, along with the proceeds of the $44,000.00 loan made to Hoss by the Bellmead State Bank of Waco, were used to purchase stock in Delta Corporation and were deposited in Delta Corporation's account with appellee. On March 24, 1970, the Austin bank charged the account of appellee with the amount owing on the Pederson, Flora, Kuvet and Knipp notes and forwarded those notes to appellee. On May 6, 1970, appellee's loan committee approved four loans of $44,000.00 each to Flora, Kuvet, Pederson and Hoss, for the stated purpose of purchasing Delta Corporation stock. Appellee also theorized that the $44,000.00 note in suit took the place of Knipp's $44,000.00 note and that Hoss thereby purchased the 2,000 shares of Delta Corporation stock that Knipp had originally acquired with the proceeds of the note from the Austin bank.

Hoss testified that he thought he was supposed to get 7,000 shares of stock in Delta Corporation and that he had signed a note for $44,000.00 as payment for such stock. He stated he had received the note "paid" back from Bellmead State Bank and his testimony indicated he thought that note represented his payment for the stock. Jordan produced a stock certificate for 5,000 shares of Delta Corporation stock which he testified had been put up by Hoss as security for the $44,000.00 note in question, but Hoss's signature is not on the stock certificate.

Since Hoss admitted that he signed the $44,000.00 note in question, appellee was entitled to recover on proof that it was the present owner and holder of the note, unless a defense was raised by the evidence. *Anderson v. Industrial State Bank of Houston*, 478 S.W.2d 215, 217 (Tex.Civ.App.—Houston [14th], 1972, writ ref'd n. r. e.). It is appellee's position that the defense of unauthorized completion is unavailable to Hoss because it is a holder in due course.

A holder in due course is a holder who takes the instrument for value, in good faith and without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person. A payee may be a holder in due course. Sec. 3.302, Tex.Bus. & Com.Code. When a defense is shown to exist, the party claiming the rights of a holder in due course has the burden of establishing that it is "in all respects" a holder in due course. Section 3.307, Tex.Bus. & Com.Code.

When the defense is raised that the completion was unauthorized, the rules set forth in Sec. 3.407 as to material alteration apply, and the burden of establishing that the completion was unauthorized is on the party asserting that defense. Sec. 3.115, Tex.Bus. & Com.Code. Insofar as applicable here, Sec. 3.407, Tex.Bus. & Com.Code, merely provides that the unauthorized completion of an instrument is a material alteration within the meaning of the Code. Under comment 3(a) of that section, it is suggested that a material alteration will dis-

charge the party to the contract if it is made by the holder or his authorized agent or employee or by his confederates.

In the case before us Hoss testified that the blank note which he left with appellee's chief executive officer was filled in and completed without his authorization. In our opinion this evidence raised fact issues as to whether there was an unauthorized completion of the note by appellee. Considering the evidence in the light most favorable to Hoss, we hold that there were material issues of fact which precluded rendition of an instructed verdict as to the $44,000.00 note and that the cause must be reversed and remanded for a new trial on those issues. We, therefore, sustain appellants' first two points of error.

In their third point of error appellants assert that there were material fact issues as to their liability on the $60,000.00 note and that the trial court erred in rendering an instructed verdict in favor of appellee.

The $60,000.00 note dated July 29, 1970, was signed by Hoss on behalf of Sea Hoss Marine Enterprises, Inc. and was covered by Hoss's written guarantee of all Sea Hoss's debts.

On June 2, 1970, appellee had loaned the aggregate sum of $47,000.00 to three corporations owned by Hoss. These loan transactions had been handled by Govie Waller who was president and chairman of appellee's board at that time. The loan proceeds were transferred from these corporations to Marine Management & Consultants, Inc. and that company in turn transferred the funds to Cinco Amigos, Inc. At that time Govie Waller was president of Cinco Amigos and owned stock in that company. The proceeds of the $60,000.00 loan to Sea Hoss Marine Enterprises, Inc. were used to pay off the principal and interest on the $47,-000.00 loans and the balance of $12,334.40 was withdrawn and spent by Sea Hoss.

Hoss testified that prior to March 1970 he had owned a 16% interest in Cinco Amigos and that he had transferred the $47,000.00 loan proceeds from his three companies to Cinco Amigos because Waller had told him to do so. Hoss testified that his corpora-tions owed appellee about $250,000.00 on loans which he had personally guaranteed and since he didn't have the money to pay off the loans in case they were called due, he did what Waller told him to do. Hoss testified that Waller had told him that Cinco Amigos would repay the $47,000.00 in four or five days but that it was never repaid. Waller had called him about July 29, 1970, and told him that the bank examiners had criticized the $47,000.00 loans and that the bank would loan Sea Hoss Marine Enterprises, Inc. $60,000.00 so that the $47,-000.00 indebtedness and accrued interest could be paid. The $47,000.00 loans were not then due but that Waller wanted them repaid. The $47,000.00 loans had been made on condition that the loan proceeds would be transferred from Hoss's corporations to Cinco Amigos and that the $60,-000.00 loan had been made on condition that the proceeds would be used to pay off the principal and accrued interest on the $47,-000.00 loans.

The gist of Hoss's testimony is that he applied a substantial portion of the loan proceeds to the purpose specified by the appellee's executive officer and that a material fact issue was presented as to whether the note had been obtained through duress.

Hoss contends that he was induced to execute the $60,000.00 note under economic duress imposed by appellee's chief executive officer, Waller. Assuming without deciding that the conduct of Waller might be imputed to appellee, we must determine whether the facts, considered in a light most favorable to Hoss's contention, might support a judgment in his favor based upon the defense of duress.

In *Sanders v. Republic Nat. Bank of Dallas*, 389 S.W.2d 551 (Tex.Civ.App.—Tyler, 1965, no writ), the maker of a promissory note contended that he had given the note under economic duress and that a representative of the bank had demanded payment of past due rent as a condition to the completion of a purchase of the property under contract of sale. The trial court's judgment for the bank was affirmed on the

ground that there was evidence showing that the payment had been voluntarily made and that the bank had a legal right to assert its claim to rental under the provisions of the sales contract. The court stated:

". . . It is well established that there can be no duress unless there is a threat to do some act which the party threatening has no legal right to do. Such threat must be of such character as to destroy the free agency of the party to whom it is directed. It must overcome his will and cause him to do that which he would not otherwise do, and which he was not legally bound to do. The restraint caused by such threat must be imminent. It must be such that the person to whom it is directed has no present means of protection. Where the demand is wrongful and it is necessary for the demanding party to resort to the courts to enforce it, there is no duress. But where the party making the demand has, or is supposed to have, the power to injure the business or property interests of the one upon whom the demand is made, without resort to the courts to enforce the demand, and threatens to do an act which would cause such injury, and which he has no right to do, and thereby enforces compliance with his demand, against the will of such party through fear of injury to his business or property, such threats amount to duress, if it appears that the party making such demand ought not in good conscience to retain the benefit received by reason thereof. *Dale v. Simon*, 267 S.W. 467, 470, (Tex.Com. App.); *Lawrence v. J. M. Huber Corporation*, 347 S.W.2d 5, (Tex.Civ.App.)."

In *Fonville v. Wichita State Bank & Trust Co.*, 161 Ark. 93, 255 S.W. 561 (1923), the Supreme Court of Arkansas was faced with a similar question. In that case the maker of the note contended that the president of the bank came to his place of business and insisted he give the bank a new note to cover the amount of a debt which had been discharged in bankruptcy and stated that he had better sign the note or he would have the "ill will" of the bank.

He stated that the bank's president had insisted that if he did not sign the note that he would be given "trouble all the time on my credit." He stated that he had thereafter renewed the note from time to time because the bank "had a chain around my neck" and that there had been nothing for him to do other than sign it. Affirming the judgment of the trial court in favor of the bank, the Arkansas Supreme Court stated:

". . . It does not appear from the appellant's testimony that the officer of the bank made any direct or tangible threat, but merely held out to him that by refusing to sign the note he would incur the ill will of the bank. This is not sufficient to constitute duress such as would avoid the contract. The parties were dealing entirely at arm's length and there was no such intimidation or coercion as was calculated to put appellant in fear either of his person or property . . ."

In the instant case Hoss denied that he was physically afraid of Waller and admitted that Waller made no overt threats against him. He conceded that Waller had not said that the bank would call his notes if he did not sign the $60,000.00 note and that Waller didn't say anything that threatened him financially. He stated only that Waller had led him to believe that "we sort of swam or sank together" and that if he, Waller, "sank", that Hoss was also going to "sink" with him.

Duress is a matter of degree and whether or not circumstances of duress are established is generally a question of fact. *Sanders v. Republic National Bank of Dallas*, supra. However, whether established facts will constitute the legal defense of duress is a matter of law to be determined by the court. *Fairbanks v. Gossett*, 118 S.W.2d 945 (Tex.Civ.App.—San Antonio, 1938, writ dism'd); 11 Am.Jur.2d, Bills and Notes, Sec. 725. Under the facts presented by Hoss's own testimony we believe the trial court properly determined, as a matter of law, that no factual issue was presented on the defense of duress. We overrule appellant's third point of error.

Since we have sustained appellants' first two points of error, which require a retrial of the issues presented with respect to the $44,000.00 note, we need not consider appellants' points of error 4 and 6 asserting that Hoss's liability on said note should have been offset by a $45,422.68 check issued by Delta Corporation to appellee bearing notation that it had been issued to "Pay off Roger Hoss Delta stock note, principal $44,-000.00, interest $1,422.68", and by the value of 5,000 shares of Delta stock held by the appellee as security for the $44,000.00 note.

In view of another trial we briefly consider appellants' seventh point of error asserting the trial court's error with respect to the use of a bank examiner's report on appellee issued by the Texas Department of Banking. During the course of cross-examination of appellee's president by the appellants' attorney, the trial court ordered this report delivered to the court; after placing the report under seal, the court allowed the report to be returned to appellants' attorney but did not permit such attorney to utilize the report in the course of his further examination. Appellee argues that Article 342–210, Tex.Rev.Civ.Stat.Ann., protects the report from disclosure as privileged and confidential information of the Banking Department and contends that any use of such information in a legal proceeding would constitute a violation of the statute. We have not been called upon to determine the admissibility of this report; only whether the trial court erred in denying appellants' counsel use of the report during his examination of the witnesses. Unless it is shown that the report was illegally obtained, we see no basis for denying appellants the use of the report during further trial proceedings. See *Benson v. San Antonio Savings Association*, 374 S.W.2d 423, 428 (Tex.1963).

In their fifth point of error appellants assert the trial court erred in awarding an attorney's fee of $30,000.00 on the two notes in question, which each provide that the holder is entitled to a reasonable attorney's fee of not less than 10% of the amount of the unpaid principal and interest.

Appellee's attorney testified that reasonable attorney's fees under the two notes would amount to the aggregate sum of $30,000.00. Although no contradictory evidence was offered as to the amount of such fees, the question as to the reasonableness of attorney's fee is one of fact. *Smith v. Davis*, 453 S.W.2d 340, 347 (Tex.Civ.App.—Fort Worth, 1970, writ ref'd, n. r. e.). Thus, it was reversible error to instruct a verdict on this issue. *Stein v. Lewisville Independent School Dist.*, 481 S.W.2d 436 (Tex.Civ. App.—Fort Worth, 1972, writ ref'd, n. r. e.), certiorari denied 414 U.S. 948, 94 S.Ct. 272, 38 L.Ed.2d 203. This issue is severable and may be retried upon remand with the issues as to the $44,000.00 note.

The judgment of the trial court is affirmed insofar as it awards judgment in favor of appellee against appellants for the amount of the $60,000.00 note and interest accrued thereon. The judgment of the trial court is reversed and remanded for new trial as to the award with respect to the $44,000.00 note and interest accrued thereon, and as to the award of attorney's fees with respect to both such notes.

Costs of appeal are taxed one-half against appellee and one-half against appellants.