

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-16-00004-CV

PARK PLAZA SOLO, LLC, APPELLANT

V.

BENCHMARK-HEREFORD, INC., APPELLEE

On Appeal from the 222nd District Court
Deaf Smith County, Texas
Trial Court No. CI-2013C-54, Honorable Roland D. Saul, Presiding

October 24, 2016

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Park Plaza Solo, LLC, (Park) appeals from a judgment entered in favor of Benchmark-Hereford, Inc. (Benchmark). The latter sued Park for duress and breach of contract. The claims arose from a lease relationship between the two. Benchmark had leased a portion of a building from Park in which to open a Sears store. The leased area had to be portioned from the non-leased area via the construction of a wall. Other construction had to occur as well, such as the installation of a front door and electrical wiring. The obligations to perform those various projects were apportioned among the

parties. Eventually, Benchmark would complain about Park's performance of its promises, Park's interference with Benchmark's performance of its own tasks, and of Park's alleged effort to wrongfully saddle Benchmark with the duty to pay certain electrical utility charges. These complaints made the basis for Benchmark's suit along with claims of breached contract and duress.

The cause was tried to a jury which entered findings favorable to Benchmark. Judgment was then entered on those findings, and Park appealed.

Through four issues, Park contends that 1) the evidence is legally and factually insufficient to support the jury's answers to the questions posed in the charge, 2) question 3 of the charge required the jury to answer a question of law, 3) questions 2, 4 and 5 were rendered immaterial because of "Benchmark's failure to obtain effective liability finding," and 4) the trial court erroneously awarded post judgment interest. We reverse.

*Issue One*

Park initially attacks the legal and factual sufficiency underlying the answer of "yes" to the first question submitted to the jury. Via that question, the jury was asked: "Do you find that BENCHMARK . . . payed utility charges under duress caused by PARK . . . in threatening an unlawful action to-wit eviction for nonpayment of utility charges." We sustain the issue.

Evidence is legally insufficient to support a verdict when 1) evidence of a vital fact is completely absent; 2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; 3) the evidence offered to prove a vital fact is no more than a mere scintilla; or 4) the evidence establishes

2

conclusively the opposite of the vital fact. *Southwestern Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 713 (Tex. 2016). In assessing whether the record before us falls within any of those four categories, we restrict our review to the evidence tending to support the jury's verdict and disregard all other to the contrary, and construe that evidence and possible, rational inferences therefrom in the light most favorable to the verdict. *BNSF Railway Co. v. Phillips*, 485 S.W.3d 908, 910 (Tex. 2015). And, if in so considering the evidence, we conclude that it is sufficient to enable a reasonable and fair-minded juror to reach the verdict in question, then the evidence is legally sufficient to support that verdict. *Seger v. Yorkshire Ins. Co.*, No. 13-0673, 2016 Tex. LEXIS 503, at *41 (Tex. June 17, 2016).

In reviewing a factual sufficiency challenge, our task is a bit different. Under it, the jury finding may be negated only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence that a new trial be ordered. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, No. 15-0049, 2016 Tex. LEXIS 580, at *82-83 (Tex. June 24, 2016).

Assuming *arguendo* that duress constitutes an independent cause of action*, see Zouzalik v. Wells Fargo Bank, N.A.*, No. 07-08-00411-CV, 2010 Tex. App. LEXIS 3211, at *3-4 (Tex. App.—Amarillo April 29, 2010, no pet.) (mem. op.)(describing duress as a defense to the enforcement of a contract), its elements require proof of 1) a threat to do something a party has no legal right to do, 2) some illegal exaction or some fraud or deception, and 3) imminent restraint such as to destroy free agency without present means of protection. *Id.*; *Meyer Farms, Inc. v. Texaco Producing Co.*, No. 07-98-0029-

3

CV, 1999 Tex. App. LEXIS 1640, at *11-12 (Tex. App.—Amarillo March 10, 1999, pet. denied)(op. on reh'g); *see Dale v. Simon*, 267 S.W. 467, 470 (Tex. Comm'n App. 1924, judgm't adopted) (stating that there is no duress unless the threat is of such character as to destroy the free agency of the party to whom it is directed); *Matthews v. Matthews*, 725 S.W.2d 275, 278 (Tex. App.—El Paso 1986, writ ref'd) (stating the same). Falling outside the scope of the third element, though, are situations where the demand is wrongful but the party making it must resort to the court to enforce it. *Meyer Farms, Inc. v. Texaco Producing Co.*, 1999 Tex. App. LEXIS 1640, at *13-14. And, related to this principle is another that simply declares that a threat to institute a civil action or the actual initiation of such an action cannot constitute duress, as a matter of law. *Continental Casualty Co. v. Huizar*, 740 S.W.2d 429, 430 (Tex. 1987). Finally, whether or not circumstances of duress are established is generally a question of fact, but whether established facts constitute duress is a matter of law to be determined by the court. *Sea Hoss Marine Enterprises, Inc. v. Angleton Bank of Commerce*, 536 S.W.2d 592, 596 (Tex. Civ. App.—Houston [1st Dist.] 1976, writ ref'd n.r.e)

With the foregoing in mind, we turn to the record at bar. The lease, which was executed in September of 2011, provided Park with the right to "terminate this lease as if the term had expired and exercise all right of entry and re-entry" should Benchmark materially breach provisions of the agreement. Furthermore, one such provision obligated Benchmark to pay its "portion of the utilities." In view of its promise, Benchmark periodically received an invoice representing the portion of utilities due from it.[1] At trial though, Benchmark's representative said he ". . . was forced to pay it by

---

[1] Benchmark alleged that Park had no right to demand payment because the promise to pay utilities was unenforceable due to § 93.012 of the Texas Property Code. Via that statute, a "landlord may

4

threat of eviction several times." This evidence is undisputed. And in viewing it in a light most favorable to the jury's verdict, what we see is a situation fundamentally distinct from a typical duress scenario.

Normally, the promise or agreement sought to be avoided is exacted via a threat to do something the party issuing the threat had no legal right to do. The promise or agreement by Benchmark to pay its pro rata share of the utilities was made before or at the time it executed the lease. Its agreement to accord Park the right to gain possession of the premises should a breach occur was also made before or at the time of the lease's execution. Moreover, no evidence of record indicates that either the promise Benchmark sought to avoid (*i.e.* pay utilities) or its agreement to vest Park with the means of enforcing that promise (*i.e.* right to re-entry) were extracted by some preceding threat of any kind. Indeed, the evidence indicates that Benchmark had its own attorney draft a proposed lease, and in that proposal it had agreed to pay all the utilities attributable to the entire vacant space. Park amended the provision to reduce Benchmark's liability merely to the utilities attributable to the limited space it intended to rent. No one proffered evidence of any threat compelling Benchmark to agree to Park's proposal when the lease was ultimately signed. Nor did anyone proffer evidence or authority suggesting that a potential landlord lacks the legal right to negotiate with his prospective tenant to have the latter pay utilities. Simply put, Benchmark sought to avoid the contractual promise without showing that the promise was exacted by some

___

not assess a charge, excluding a charge for rent or physical damage to the leased premises, to a tenant unless the amount of the charge or the method by which the charge is to be computed is stated in the lease, an exhibit or attachment that is part of the lease, or an amendment to the lease." TEX. PROP. CODE ANN. § 93.012(a) (West 2014). Without attempting to explain if an agreement to pay utilities is a "charge," Benchmark nonetheless concluded that § 93.012(a) prevented Park from enforcing the obligation since the amount of the "charge" or method by which it was to be computed was omitted from the lease.

threat from Park to do that which it had no right to do. Without such evidence there is no duress.

To the extent that Benchmark suggested that application of § 93.012(a) somehow rendered Park's effort to enforce Benchmark's promise illegal, it failed to consider the effect of other provisions of the same statute. The provision in mind is § 93.012(b) which states that § 93.012 "does not affect a landlord's right to assess a charge or obtain a remedy allowed under a statute or common law." *Id.* § 93.012(b). Again, we know of no law generally prohibiting a landlord from negotiating with its tenant to pay utilities incurred by the latter. And, given Benchmark's promise to pay for utility services it used, Park was entitled to collect the value of those services under the common law theory of *quantum meruit* despite any purported failure to provide a formula in the lease by which the obligation to pay could be calculated. *See Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990) (stating that quantum meruit is an equitable remedy available when there is no express contract covering services or materials furnished and the person to be charged accepted those services or materials under circumstances which reasonably notified the person that payment was expected). It cannot be denied that Benchmark not only expected but also agreed to pay for the utility services provided by Park. So, it appears that § 93.012 does not even apply to the scenario before us.

Lastly, the mere threat of "eviction" poses its own complications. What was meant by the term is unknown because Benchmark failed to proffer evidence expanding upon its actual substance. In effect, the comment about why it eventually fulfilled its contractual promise and periodically paid utilities for about eighteen months was

6

conclusory. This is of import because an "eviction" may encompass a legal process initiated by the commencement of a lawsuit, *see* TEX. PROP. CODE ANN. § 24.0051 (discussing the statutory remedy of forcible entry and detainer available to a landlord), and duress cannot arise from a threat to commence a lawsuit. *Continental Caualty Co. v. Huizar, supra.* So, merely saying that it was threatened with "eviction" without accompanying that utterance with evidence suggesting that the speaker meant something other than the commencement of a lawsuit is not enough to illustrate actionable duress.

*Issue Two*

Next, Park alleges that the jury's answer to question two of the charge should be disregarded as immaterial. We agree and sustain the issue.

Per the question, the jurors were asked to determine the amount of money that would fairly and reasonably compensate Benchmark for its damages caused by the aforementioned duress. Our having held that no evidence supported the finding of duress, it logically follows that Benchmark is not entitled to damages caused by that unproven wrong.

*Issue Three*

Next, Park contends that the jury's answer to question three of the charge should be disregarded as immaterial and unsupported by the evidence. We overrule the contentions.

Our analysis begins with the allegation that the question was immaterial. According to Park, it was immaterial because it submitted a question of law and was fundamentally flawed. We disagree and agree in part.

7

Per question two, the jury was asked: "Did Defendant, Park . . . fail to comply with the Lease Agreement?" The trial court followed its question with instructions. Aspects of those instructions told the jury that 1) "[i]t is your duty to interpret the following language of the agreement to determine if one of the parties failed to comply with the terms of the agreement: [left blank]"; 2) "[y]ou must decide its meaning by determining the intent of the parties at the time of the agreement;" and 3) "[c]onsider all the facts and circumstances surrounding the making of the agreement, the interpretation placed on the agreement by the parties, and the conduct of the parties." No one disputed the interpretation of the lease, though. Nor did the trial court include within the aforementioned passages any reference to the particular language in the lease purportedly necessitating interpretation. Furthermore, neither trial attorney informed the trial court of either circumstance or otherwise objected to that part of the charge before the trial court read the instrument to the jury. In remaining silent, we assume that Benchmark is correct in contending that Park waived any complaint about the inclusion of the verbiage in the overall instructions. *See* TEX. R. CIV. P. 274 (stating that a party objecting to a charge must point out the objectionable matter).

Yet, Park still claims that the question remains subject to attack as immaterial, despite the absence of an objection to the jury charge. It is correct. A request to disregard a jury answer as immaterial need not be raised as an objection to the charge. *Dallas v. Moreau*, 718 S.W.2d 776, 779 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.) (holding that the trial court should have granted the motion for judgment notwithstanding verdict because the jury questions were immaterial). Indeed, logic suggests that the jury must first answer a question before one can ask that the answer

be disregarded. Furthermore, the complaint urged here was incorporated into a post-judgment motion of Park. So, it is a complaint that we can address.[2]

As support for the basis of the complaint, Park asserts that the trial court asked the jurors to decide a question of law and such questions are not within the bailiwick of a jury. Being an answer to a question of law, the finding may be ignored as immaterial, it concludes. We agree with the proposition that questions of law submitted to the jury are immaterial and that answers thereto may be disregarded. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1999); *accord, Rancho La Valencia, Inc. v. Aquaplex, Inc.*, 297 S.W.3d 781, 783 (Tex. App.—Amarillo 2008), *aff'd in part, rev'd in part on other grounds, Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768 (Tex. 2009) (holding that because the interpretation of an unambiguous contract is a question of law, the jury's finding on a question asking it to interpret the contract may be ignored as immaterial). Yet, as previously indicated, that specific question is not the source of Park's complaint. Instead, its focus lies on an instruction submitted in conjunction with the question and that directed the jurors to interpret the contract when deciding if a breach occurred.

Since no one contended that the contract was ambiguous, the trial court arguably directed the jury to address a question of law when told to "interpret" the unambiguous agreement. *Rancho La Valencia, Inc. v. Aquaplex*, Inc., 297 S.W.3d at 783. And, by applying *Quick*, the jury's effort, if any, to do that (*i.e.* determine what the provisions of the contract meant) can be ignored as immaterial. Yet, that does not mean we can or must ignore the answer to the actual question posed (*i.e.* "[d]id . . . Park . . . fail to

---

[2] In so concluding, we do not address whether a like complaint may be raised on appeal for the first time without initially asking the trial court to consider the matter.

9

comply with the Lease Agreement?"). There was a factual dispute regarding its performance of various obligations imposed by the lease, such as its completion of a wall by installing insulation. And, while asking whether a party "breached a contract" or "failed to comply with an agreement" may be a question of law in some circumstances, *see Lafarge Corp. v. Wolff, Inc.,* 977 S.W.2d 181, 186 (Tex. App.—Austin 1998, pet. denied) (comparing a question asking if the ". . . Corporation fail[ed] to comply with the contract" to a question asking if the corporation breached the contract and holding that the submission of a "breach of contract" issue improperly requires the jury to determine a question of law), it is not when the facts underlying the purported breach are disputed. *Grohman v. Kahlig*, 318 S.W.3d 882, 887 (Tex. 2010) (stating that "[w]hether a party has breached a contract is a question of law for the court, not a question of fact for the jury, when the facts of the parties' conduct are undisputed or conclusively established."). So, the jury's answer to the actual question cannot be deemed immaterial due to it purportedly involving a question of law.

Having rejected the materiality argument, we now turn to the second prong of Park's contention. Through it, the corporation asserts that "[t]here is neither legally nor factually sufficient evidence to support a finding that [Park] materially failed to comply with any provision of the Lease Agreement." This is allegedly so since "[t]he only 'breach of contract' that Benchmark alleged [in its live pleading] was in its 'Count 1 – Breach of Contract – Breach of Express Warranty Quit (sic) Enjoyment Access,'" and there was no evidence establishing each element of a breach of express warranty of quiet enjoyment. We disagree.

Benchmark's live pleading (*i.e.* its second amended petition) may be inartfully drawn. Nevertheless, within its "Count 1 - Breach of Contract - Breach of Express Warranty to Quit [sic] Enjoyment Access," it alleged that 1) "Defendant refused to insulate the partition wall" as was its "responsibility," and 2) "Defendant was responsible for electrical wiring to Sears' requirements" and "[a]s a result of Sears' requirements, TBar Electrical, Inc. installed electrical wiring and charged the bill to [Benchmark]." Furthermore, those allegations must be liberally construed, due to the absence of any special exceptions filed by Park. *See Prudential Ins. Co. of Am. v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 81 (Tex. 2000) (stating that "[a]bsent special exceptions, we construe a petition liberally in favor of the pleader."). And, in so construing them, we conclude that they accuse Park of breaching the lease because it did not build a partition wall and wire the facility as promised. So, Benchmark alleged more than just a claim of breached warranty of quiet enjoyment. Furthermore, Park did not explain why the two claims falling outside the warranty allegation were not supported by either legally or factually sufficient evidence.

However, we do agree with the allegation that no evidence established a breach of warranty to quiet enjoyment of the leased premises. The elements of such a cause of action are the same as those applicable to a claim of constructive eviction. *1221 Eldridge Rd., Inc. v. Life Changing Ministries & Fellowship, Inc.*, No. 01-14-00893-CV, 2016 Tex. App. LEXIS 598, at *23-24 (Tex. App.—Houston [1st Dist.] January 21, 2016, pet. denied) (mem. op.). Among other things, each requires proof that the act complained of "permanently deprived" the tenant of the use and enjoyment of the premises. *Id.* Nothing in the record here discloses that Benchmark either abandoned

11

the premises or was permanently deprived of its use and enjoyment. On the contrary, Benchmark remained at the locale and opened its Sears store after Park committed the acts about which Benchmark complained. Thus, one element of the cause of action went unproven, and any finding that the alleged warranty of quiet enjoyment was breached lacks all evidentiary support.

*Issue Four*

Via Question 4 of the charge, the trial court asked the jury: "[w]hat sum of money, if any paid now in cash, would fairly and reasonably compensate Benchmark . . . for its damages, if any that resulted from such failure to comply" with the lease agreement? It answered the question with the sum of "$24,276.20."[3] This response does not support the judgment, according to Park, because it lacked legally or factually sufficient evidentiary support. We agree.

Though various damages were sought by Benchmark, all the litigants seem to agree that the only ones awarded by the jury were for the purported breaches relating to the installation of electrical wiring, the wiring of an outdoor sign, and the failure to insulate the partition wall.[4] Indeed, based upon the damage figures submitted by Benchmark related to those acts, the injury it allegedly suffered equaled $24,276. Thus, we determine whether that award has the support of legally or factually sufficient evidence by looking at the three components mentioned.

Section 11 of the written lease manifested the contractual obligation underlying the damages awarded at bar. It provided that:

---

[3] The jury did not specify the components of the award, even though the trial court instructed it to "[a]nswer separately in dollars and cents for damages, if any."

[4] Benchmark indicated as much in its response to post-judgment motions filed by Park and the tenor of its appellee's brief. Only the three components were discussed by Benchmark in its brief.

12

This space is to be built out to conform to the requirements of Sears. The width is to be a minimum of 60 feet and the depth is to be a minimum of 125 feet. Landlord's responsibility is the partition wall, the back wall, electrical wiring to Sears' requirements, a small office, and painting the walls and ceiling to Sears' requirements. The Tenant is responsible for all other improvements required by Sears.

In reading that provision of the lease, we construe Park's "responsibility" to be akin to the obligation of a contractor to complete a construction project. Simply put, the lessor agreed to perform various construction and installation tasks which would enable Benchmark to use the facility. Consequently, the damages available to Benchmark should Park fail to fulfill its responsibilities would be measured in the same way damages are measured for breach of a construction contract. And, as described in *McGinty v. Hennen*, 372 S.W.3d 625 (Tex. 2012), such damages can be calculated in two ways. Under one, the difference-in-value comprises the available damages; that is, the complainant is entitled to receive the difference between the value of the building as constructed and its value had it been constructed according to the agreement. *Id.* at 627.

Under the other, injury is determined by the cost to complete or repair the project less the unpaid balance on the contract. *Id.* This mode of recovery is known as the remedial damges, and if used, the party seeking the award must prove that the damages sought were reasonable and necessary. *Id.* One satisfies that aspect of the test by doing more than simply proffering evidence of "'the nature of the injuries, the character of and need for the services rendered, and the amounts charged therefor.'" *Id.*, *quoting, Dallas Ry. & Terminal Co. v. Gossett*, 156 Tex. 252, 294 S.W.2d 377, 383 (Tex. 1956). In other words, evidence of "put-of-pocket costs alone" do not establish

13

that the damages were reasonable and necessary. *Id.*, *quoting Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 200 (Tex. 2004). According to McGinty, ". . . 'proof of the amounts charged or paid does not raise an issue of reasonableness, and recovery of such expenses will be denied in the absence of evidence showing that the charges are reasonable.'" Other evidence showing that the charges were reasonable is needed. *Id., quoting, Dallas Ry. & Terminal Co. v. Gossett*, *supra*.

Furthermore, the claimant also has the burden to establish that the damages sought were caused by the contractual breach in dispute. One does this by proffering evidence illustrating that the breached promise was a substantial factor in causing the damages sought. *Tamimi Global Co. v. Kellogg Brown & Root, L.L.C.*, 483 S.W.3d 678, 704-705 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

The first component of the damage award we address relates to "electrical wiring." As seen from the lease excerpt quoted above, Park assumed the "responsibility" to install "electrical wiring to Sears' requirements." Defense Exhibit 1 disclosed those requirements. Furthermore, TBar Electrical was first hired by Park to perform the requisite task. But once Park ended that relationship, Benchmark retained TBar to finish the effort.

The charges sought by TBar once the work was completed are reflected in Plaintiff's Exhibit 7, and it is those charges that Benchmark attempted to recover from Park. So, it appears that the damages sought from Park and arising from the failure to complete its "electrical wiring" responsibility fall under the remedial damages discussed in *McGinty*. That is, Benchmark was attempting to recover from Park the cost of

14

completing the project. And, to support that recovery, the following evidence was tendered of record.

Again, we have Plaintiff's Exhibit 7. It consisted of a letter TBar sent to Benchmark stating: "Just a reminder that you have 1 overdue invoice, with an overdue balance of $10,566.55. Also, since building owner (William Home) has chosen not to pay invoices for initial electrical work @ this building requested as a result of Sears leasing building. I feel that Benchmark should pay these invoices totaling $11,902.31. Which [sic] makes a total balance owed of $22,468.86 that is long overdue." The invoices alluded to in the letter were not admitted into evidence, though. Nor did the letter itemize the particular work performed or materials provided by TBar.

So too do we have the testimony of TBar's representative that: 1) the corporation was involved in "doing the electrical work as per Sears"; 2) TBar gave no quote or price for the work it was to do; 3) TBar's charges would be based on "[h]ow much time and whatever is used"; 4) TBar was told that Sears and Benchmark were to approve the work; 5) Sears and Benchmark had the specifications; 6) "we were doing it as per what they wanted"; 7) TBar "commenced working along those lines"; 7) Park directed TBar to stop; 8) when told to stop by Park, TBar had "a bill at that time of what was owed" by Park; 9) "[a]ll the invoices at that time that he [Park] owed are $11,902.31"; 10) "Sears or . . . Benchmark, wanted us to finish—go ahead and finish it so he [Benchmark] could open up"; 11) TBar continued to work "along the Sears specifications"; 12) Plaintiff's Exhibit 7 "reflect[ed] the total bill"; 13) "all that electrical wiring was under Sears' specifications"; 14) Defense Exhibit 1 was what "they had laying down there on the table"; 15) a purported representative from Sears was present telling TBar what to do;

15

16) TBar "performed all the work set out in [its] bill"; 17) TBar ran conduit for the air conditioning; and 18) the witness did not know if Sears was requiring TBar to rewire existing systems though Benchmark apparently required it.

Missing from the record is evidence comparing what TBar did to the written specifications sent to Park from Sears and expressed in Defense Exhibit 1. Missing is evidence that what the Sears representative and Benchmark told TBar to do was nothing more than what was encompassed by the actual specifications sent by Sears. Missing is any evidence indicating the amount of time spent in doing any of the work demanded by Benchmark and the Sears' representative. Missing is evidence of the particular materials installed by TBar. Missing is evidence of the hourly or daily or weekly or monthly charge levied by TBar for its work. Missing is evidence that TBars' hourly or daily or weekly or monthly charge for the work done was reasonable. Missing is evidence of the actual materials installed by TBar. Missing is evidence of the costs of those materials and whether those costs were reasonable. Missing is evidence of the extent that existing systems were rewired as demanded by Benchmark but not necessarily Sears. Missing is evidence that the work done and materials provided specifically related to "electrical wiring," as opposed to some general "electrical work." The absence of the latter evidence is of particular import since Park's responsibility encompassed only "electrical wiring," not electrical work in general.

All we have here is evidence of Benchmark's effort to collect from Park the charges purportedly incurred by TBar for doing some unknown quantum of "electrical work." Furthermore, that unexplained work was done at the direction of a purported Sears' representative who did not testify and Benchmark. Whether the work and

16

charges related thereto were reasonable and necessary is unknown. Whether the materials and charges related thereto were reasonable and necessary is unknown. Whether the work and materials included only that encompassed in the specifications or requirements sent by Sears to Park is unknown, and it was the "electrical wiring" per the requirements of Sears that Park agreed to perform.

The situation before us is no different than that addressed in *McGinty* where the party seeking damages merely proffers evidence of his out-of-pocket costs or charges incurred or to be paid. That is not enough to satisfy the need to prove the damages sought were reasonable and necessary. And, without knowing the specifics about what was done or installed by TBar and the charges attached to those efforts, we cannot begin to assess the reasonableness of its charges even if we could do so without expert testimony from someone knowledgeable in the field of construction.

It is not enough for Benchmark to fill the void by arguing that "[a]ll damages sought are from an agreement between Park . . . and TBar" for the averment ignores the mandate of *McGinty*. And, Benchmark cites us to nothing that suggests Park agreed to pay TBar's charges irrespective of whether they were reasonable or necessary.

In short, without evidence that the electrical work done by TBar was reasonable and necessary, Benchmark failed to present evidence establishing a prerequisite to an award of damages. Simply offering evidence of the amount charged by TBar was not enough. *McGinty v. Hennen, supra*. Consequently, we agree that no evidence supports the award of $22,468.86 as damages due to Park's breach of its "electrical wiring" responsibility.

17

The second component of the damage award involves the outdoor sign, and it comprised $1,309.50 of the $24,276.20 sum. Benchmark concedes that Park's sole obligation encompassed the provision of electrical wiring to the sign. And, to illustrate the damage suffered due to Park's failure to provide such wiring, Benchmark offered into evidence a bill from the entity (Wellborn Sign Company) hired to complete the task. While that bill actually described the time expended and materials used to do the job, no one testified or proffered evidence to illustrate that the charges were reasonable or necessary. So, again, Benchmark was utilizing the remedial damages calculation to gauge its damages, and, again, it failed to prove the expenses or damages sought were reasonable and necessary. As said in *McGinty*, "recovery of such expenses will be denied in the absence of evidence showing that the charges are reasonable." *McGinty v. Hennen, supra.*

The third component of the damage award related to the insulation of the partition wall. Whether the responsibility assumed by Park included the insulation of the partition wall we need not address at this time.[5] Instead, we focus on the damages sought from Benchmark arising from that purported breach. Benchmark attempted to prove them by tendering into evidence Plaintiff's Exhibit 4. It represented an invoice from a local business describing the amount of insulation acquired by Benchmark and the price therefor. Nothing was said about whether the charges or quantities reflected in the document were reasonable or necessary. Being that this evidence also evinces an attempt to recover damages via the remedial damages measurement, Benchmark was obligated to address the reasonability and necessity of the expense. It did not, so the expense was not recoverable due to the absence of requisite evidence.

---

[5] The lease said nothing about insulating the wall.

In sum, there is legally insufficient evidence to support each component of damage encompassed in the $24,276.20 award. So, we sustain this particular issue of Park.

*Issue Four—Attorney's Fees*

Next, Park attacks the award of attorney's fees to Benchmark. It believes that the fees were not recoverable because Benchmark failed to obtain an effective liability finding. We sustain the issue.

Benchmark sought fees under chapter 38 of the Texas Civil Practice and Remedies Code. To obtain the relief provided by that statute, "a litigant must prevail on a breach of contract claim and recover damages." *Ashford Partners, Ltd. v. ECO Res., Inc.* 401 S.W.3d 35, 40-41 (Tex. 2012). Our having found that Benchmark failed to prove itself entitled to the damages awarded by the jury, it also failed to satisfy the second prong of *Ashford*. It did not recover damages. So, attorney's fees could not be awarded to Benchmark under chapter 38 of the Civil Practice and Remedies Code.

*Issue Five—Interest*

The last contention involves the calculation of post-judgment interest. We need not consider it given the manner in which we resolved the other issues raised by Park.

Accordingly, we reverse the judgment awarding damages to Benchmark and render judgment denying Benchmark recovery against Park.


Brian Quinn
Chief Justice